HARRY LINDAHL v. INDEPENDENT SCHOOL DISTRICT NO. 306, HUBBARD COUNTY.

133 N. W. (2d) 23.

January 22, 1965—No. 39,336.

*Thomas M. Hilligan* and *Smith, McRae & Hilligan,* for appellant.
*Fred N. Peterson, Jr.,* and *Peterson & Popovich,* for respondent.

ROGOSHESKE, JUSTICE.

Appellant contests a bond election of an independent school district held pursuant to Minn. St. 123.32. He appeals from a judgment for the contestee, Independent School District No. 306. The district held its bond election on April 19, 1963, for the purpose of authorizing the school board to issue bonds. The question voted upon was:

"Shall Independent School District No. 306 borrow money by issuing its negotiable coupon general obligation school building bonds in an aggregate amount not exceeding $125,000 and not exceeding any limitation of indebtedness applicable on the date or dates of issuance thereof, for the purpose of providing for the acquisition and betterment of school buildings?"

The issue was approved by the electorate, 181 to 137 votes, in what contestant agrees was a free and fair election. His primary contention is that formal statutory requirements prior to proceeding with the election were not fulfilled and that this failure deprived the school board of jurisdiction to hold the election. He also contends that the form of the question is invalid.

On March 25, 1963, a public meeting of the electorate was held in the school gymnasium to hear opinion on possible authorization of a bond issue. After public discussion, the board, feeling it had been sufficiently advised as to public sentiment, adjourned the meeting and retired to the superintendent's office in the same building without advising the people of its intention to continue meeting as the board in the superintendent's office, its regular meeting place. At the time of retirement, most of the electors had gone home but there were still some in the gymnasium. Those remaining were neither invited into the superintendent's office nor told to stay out, but the door to the office was left open for "quite a while." Present at the meeting was the entire board and, in addition, the superintendent and an architect.

At the meeting, a motion was made that a school bond election be held April 19, 1963. The motion carried by a six-to-one aye and nay vote, contestant registering the only no vote. Pursuant to the motion, the board decided to write to its attorneys to find out how to proceed.

Upon receipt of a formal, written resolution from the board's attorneys, the clerk called an "informal" meeting to obtain a rollcall vote. Notice of the meeting was by telephone, the usual means of notice for this school board. One member of the board, however, Albert Pederson, was not notified personally and did not attend. At this meeting on April 3, 1963, the formal resolution prepared by the board's attorneys was passed by a rollcall vote.

The board's minutes are not an accurate chronicle of the events as they, in fact, occurred. At a later meeting on May 10, 1963, the board passed a resolution approving the purported minutes of the March 25 meeting, which minutes contain the formal resolution prepared by attorneys and passed on April 3. No minutes of the April 3 meeting were kept, nor were any approved.

The findings of the trial court are summarized in its Finding of Fact VIII, which was—

"That the resolutions and proceedings calling and holding said election were done so according to law and in conformity with the stat-

utes, and were subsequently ratified by approval of minutes at a subsequent meeting."

Appellant assigns this finding as error, contending that the conclusion is not supported by the evidence. He urges, first, that any action taken at either the March 25 or April 3 meeting was a nullity because the meetings were irregular in their inception. Second, he argues that even if the March 25 meeting was valid, a resolution sufficient to satisfy statutory requirements was not then passed. Assuming that action taken at the April 3 meeting was void because of improper notice to one board member,[1] we direct our attention to the regularity of the March 25 meeting.

1. Appellant's specific objection to the March 25 board meeting is that it was not "open to the public" as required by Minn. St. 471.705[2] because the board moved from the gymnasium to the superintendent's office without inviting the public. The purpose of this statute is to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences. But, while the statute orders that the public be given an opportunity to observe, it does not compel a board to conduct business in a place most advantageously suited for public viewing.[3] Matters of school government should be decided in the relative calm of the school board meeting room, not under the glare of gymnasium lights amid the distractions of departing electors. The record makes it clear that the board moved to its meeting room to seek quiet rather than to furtively conceal its deliberations from the public. While the failure to invite the public might

---

[1] Minn. St. 123.33, subd. 5, provides: "* * * Special meetings may be called by the chairman or clerk or any three members upon notice mailed to each member at least three days prior thereto."

[2] Section 471.705 provides in part: "Except as otherwise expressly provided by law, all meetings, including executive sessions, of the governing body of any school district however organized, unorganized territory, county, city, village, town or borough and of any board, department or commission thereof, shall be open to the public."

[3] Compare City of Lexington v. Davis, 310 Ky. 751, 221 S. W. (2d) 659, with Smith v. City of Gilbertsville (Ky.) 309 S. W. (2d) 162.

be an important consideration in another instance, it is relatively unimportant here since the electors had already had ample opportunity to express their views. Since there is insufficient evidence to establish any attempt to prohibit spectators, to conceal deliberations, or to make the meeting room inaccessible to the electorate, this meeting was open to the public within the meaning of § 471.705.

2-3. The meeting of March 25 having been properly convened and conducted, the next question is whether a sufficient initiating resolution was adopted. Section 475.57[4] requires that proceedings for issuing bonds be initiated by a resolution setting out the amount of the proposed issuance and its purpose. On March 25, the board passed an oral motion to hold a bond election on April 19.

Technically, a resolution is a formal expression of the will or settled decision of a deliberative assembly, while a motion is usually a proposal for action by the assembly.[5] In many instances, however, the statutory requirement of a resolution has been fulfilled absent a formally correct statement by a governing body. Thus, it has been held that a resolution need not contain the statement "Be it resolved,"[6] nor need it even be in writing.[7] Generally, where the statute requires a resolution, any official action, though not in form a resolution, may be one in legal effect.[8] Thus, although the motion made by the board

---

[4]Section 475.57 provides: "Proceedings for issuing bonds under sections 475.51 to 475.75 shall be initiated by a resolution of the governing body of the municipality stating the amount proposed to be borrowed and the purpose for which the debt is to be incurred. Such resolution may provide for the submission of the question to vote of the electors. A town board may adopt such resolution without a statement for special town meeting being filed with the clerk."

[5]DeLeuw, Cather & Co. v. City of Joliet, 327 Ill. App. 453, 64 N. E. (2d) 779; State ex rel. Wagner v. Summers, 33 S. D. 40, 144 N. W. 730.

[6]Balacek v. Board of Trustees, 26 N. Y. S. (2d) 419, reversed on other grounds, 263 App. Div. 712, 30 N. Y. S. (2d) 1007, affirmed, 288 N. Y. 640, 42 N. E. (2d) 740.

[7]Steward v. Rust, 221 Ark. 286, 252 S. W. (2d) 816.

[8]Mill v. City of Denison, 237 Iowa 1335, 25 N. W. (2d) 323; Town of Irvington v. Ollemar, 128 N. J. Eq. 402, 16 A. (2d) 563.

lacked the formal attributes of a resolution, the deficiency of form is not fatal.

Deficiency in content in this case is more serious. Section 475.57 requires two elements to be contained in the resolution—the amount proposed to be borrowed and the purpose for which the debt is to be incurred. Neither was present in the motion as passed, which was only that the board proceed with an election to be held on April 19, 1963. The trial court found, however, that the calling of the election had been done in conformity with the statutes; hence, we must determine whether there was evidence upon which to base that conclusion.

The testimony of the board members, except the contestant, revealed that at the March 25 meeting they knew that if an election were to be called it would be for a $125,000 bond issuance with a view to building a high school addition. The cost was discussed with the architect present, not only as to total cost but also in terms of cost per square foot of the proposed addition. The architect had first been hired in May 1962 and had assisted the board in its deliberations, including a change in plans upon recommendation of the state from an elementary school addition to a high school addition.

The record demonstrates that the board considered various plans for almost a year and that the decision reached on March 25, after consulting the electorate at a public meeting (which was not required), was not a hasty one but was arrived at after the purpose and the estimated cost of the improvements were well in the minds of the members. It is significant that the record reveals that the failure to pass a formal, written resolution on March 25 did not result in confusion or misunderstanding within the board or in presenting the question to the voters. Since the testimony was undisputed that at the time of this meeting all members of the board were contemplating a high school addition with a bond issue of $125,000, the trial court could, and undoubtedly did, conclude that when the motion was passed to have an election, the word "election" could have no other significance for the members than an election for that maximum and that purpose.

It is true that § 475.57 clearly and expressly requires a resolution to

initiate a bond election. Manifestly, the purpose of such formality is to encourage and insure full deliberations before a definite conclusion is reached. It must be noted that the board adhered to this purpose by conscientious deliberations but regrettably failed to express its decision in the form of a resolution, a relatively minor but important requirement, compliance with which might have avoided a court proceeding and this appeal.

We are not persuaded, however, that we should obliterate the results of an election merely because the board did not do all that it should have done. The situation calls for application of our well-settled rule that statutory provisions which are treated as mandatory before an election is held will be construed as directory after the election, provided there was no fraud, bad faith, or misleading of the voters.[9] While we agree that the initiating resolution is jurisdictional, there are no circumstances here to compel us to impose the "drastic consequence of invalidity"[10] on this election.

Upon this record the court could have concluded that there had been substantial compliance with § 475.57. Although it would have been preferable to express the facts underlying this conclusion in the findings, we believe that the evidence is sufficient to sustain the court's conclusion and therefore hold that the irregularities were not sufficient to invalidate the vote of the people, freely and fairly taken.

4. Appellant has two additional contentions concerning the form of the question. He argues that it was phrased in the alternative in two ways—(1) The statement of the purpose (for acquisition and betterment) and alternative, and (2) the amount of the issuance ($125,000 and not exceeding any debt limitations) was alternative.

That § 475.59,[11] which prescribes the form of a school bond elec-

---

[9] E. g., Green v. Independent Consol. School Dist. No. 1, 252 Minn. 36, 89 N. W. (2d) 12; In re Order of Sammons, County Superintendent of Schools, 242 Minn. 345, 65 N. W. (2d) 198; State ex rel. Grozbach v. Common School Dist. No. 65, 237 Minn. 150, 54 N. W. (2d) 130.

[10] In re Order of Sammons, County Superintendent of Schools, 242 Minn. 345, 350, 65 N. W. (2d) 198, 202.

[11] Section 475.59 provides: "* * * In any school district, the school board or board of education may, according to its judgment and discre-

tion question, allows the purpose to be stated in terms of "acquisition and betterment" is clear from its language and from its history in relation to the case of Buhl v. Joint Ind. Consol. School Dist. No. 11, 249 Minn. 480, 82 N. W. (2d) 836. In the Buhl case, the question attacked as alternative was stated as follows (249 Minn. 480, 82 N. W. [2d] 837):

"Shall Joint Independent Consolidated School District No. 11 of Big Stone and Traverse Counties, Minnesota, borrow money by issuing its negotiable coupon general obligation bonds in an amount not to exceed $450,000 for the purpose of the acquisition and betterment of schoolhouses of the district?"

Under the statute then applicable, which required that "[e]ach proposition or question submitted shall be stated separately in the notice and on the ballots,"[12] we nevertheless held that this form presented a single question for the voters. Section 475.59 however was amended as indicated in footnote 11, *supra,* pending appeal in Buhl, "at least in part, for the purpose of rendering the question pending before us [in the Buhl case] moot,"[13] the act having a validating clause attached to it. Section 475.59, therefore, was intended to broaden the scope of a question that school boards might frame. Since we held in Buhl that a question stating the purpose as "the acquisition and betterment of schoolhouses" was valid as stating combined means to achieve

---

tion, submit as a single ballot question or as two or more separate questions in the notice of election and ballots the proposition of their issuance for any one or more of the following, stated conjunctively or in the alternative: acquisition or enlargement of sites, acquisition, betterment, erection, furnishing, equipping of one or more new schoolhouses, remodeling, repairing, improving, adding to, betterment, furnishing, equipping of one or more existing schoolhouses."
This language was added by L. 1957, c. 318, § 1.
[12]Minn. St. 1953, § 124.02.
[13]Buhl v. Joint Ind. Consol. School Dist. No. 11, 249 Minn. 480, 487, 82 N. W. (2d) 836, 840, dissenting opinion. The dissent disagreed with the majority on whether the form stated a single or double question but implicitly read the new statute as validating the form.

a single end, without the benefit of § 475.59, clearly, under the broad language of that statute, such a question is now expressly authorized.

5. Appellant's second argument concerning duplicity of the question is that inclusion of two maximum amounts, "$125,000 and not exceeding any limitation of indebtedness," invalidates the election because voters could not approve of their choice of maximum amount without voting for its alternative. This argument, however, ignores the fact that the question states only one absolute maximum beyond which the board cannot issue bonds—$125,000. If the voters approve the issuance, the board has discretion to issue less than the maximum so long as the funds received will fulfill the purpose for which they were intended.[14] Moreover, since the debt limitation is computed as of the time of issuance of the bonds, not the time of voter approval, it is always true, no matter how the question reads, that the debt limitation may preclude issuance of the full amount authorized.[15] Therefore, the question did no more than state a consequence which is possible whether or not it is specifically mentioned. While it need not be included in the question, its presence does not make the question irregular.

Affirmed.

---

[14] State ex rel. Village of Chisholm v. Trask, 155 Minn. 213, 193 N. W. 121.

[15] See, Howard, *Current Municipal Bond Procedures in Minnesota*, 40 Minn. L. Rev. 145, 147.