ST. CLOUD NEWSPAPERS, INC., and
Don R. Casey, its Editor, Appellants,

v.

DISTRICT 742 COMMUNITY SCHOOLS,
et al., Respondents.

No. C2–82–666.

Supreme Court of Minnesota.

March 25, 1983.

Boland Law Offices and Bernard E. Boland, St. Cloud, for appellants.

Donohue, Rajkowski & Hansmeier and Michael H. Donohue, St. Cloud, for respondents.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Mark S. Olson, St. Paul, for Minnesota Educ. Ass'n.

SCOTT, Justice.

This is an appeal from a final judgment of the Stearns County District Court determining that respondents, the school board and superintendent of District 742 Community Schools, did not violate the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1980).

Appellants, the St. Cloud Newspapers, Inc., and its editor, Don R. Casey, brought this action against the district, its superintendent and the members of its school board, alleging that respondents violated the Open Meeting Law by scheduling and attending meetings for which no public notice was given on September 22 and 23, 1980, in St. Cloud and on August 12 and 13, 1981, in Alexandria.

The trial court determined that none of these occasions constituted a "meeting" under the Minnesota Open Meeting Law. It also held that the superintendent of schools was subject to the requirements of the Minnesota Open Meeting Law. We reverse.

On September 22 and 23, 1980, District 742 Community Schools held a meeting at the Sunwood Inn in St. Cloud, Minnesota. The meeting was attended by all of the school board members at that time, eight district administrators, and the secondary school principals (Reverend Richard Tetzloff, one of the respondents, was not a school board member at the time and did not attend). No public notice was given of this meeting.

The general theme of the Sunwood meeting was long-range planning for the school district. The most common format was the presentation of a paper by an administrator, followed by a discussion among those present. Some of the topics discussed were: long-range planning; enrollment decline and its implications; goals of the board of education; administrative and district-wide reassignments and staff reductions; computer services; building utilization; management design; and extra-curricular activities.

The Sunwood meeting was designed to provide board members with factual information concerning issues currently facing the educational system in general and District 742 in particular. The discussions did not relate to matters pending before the board and there was no attempt to resolve specific problems of the school district. No decisions or pre-decisions were made during this meeting.

On August 12 and 13, 1981, a meeting was held at the Holiday Inn in Alexandria, Minnesota. The meeting was attended by all of the members of the school board at that time, the superintendent of schools, Kermit Eastman, and three assistant superintendents. No public notice was given of this meeting.

The purpose and format of the Alexandria meeting were similar to those at the Sunwood Inn in 1980. Among the topics discussed in Alexandria were: kindergarten organization; the Area Learning Center; improving instruction processes; transportation funding; building space utilization; long-range predictability of school attendance areas; school district finances; board of education goals; and elementary school administration.

The presentations at this meeting were made by school administrators in their ar-

eas of expertise for the purpose of providing factual information on topics relating to school administration. The seminar was not directed toward resolving specific problems of the school district and no decisions or pre-decisions were made on any issue.

During the afternoon of August 12, 1981, reporter Sally Thompson of the St. Cloud Daily Times attempted to reach school board members to learn the results of contract negotiations with district teachers. After several telephone calls, Thompson reached Superintendent Eastman's secretary, who would not tell her where the superintendent was, but said that she would try to get in touch with him. Shortly thereafter, Thompson received a call from Eastman in Alexandria. She was told the nature of the meeting and was invited to attend. We are asked to decide the following issues on appeal:

(1) Whether gatherings of all members of a school board and district administrators for the purpose of providing the board members with background information concerning issues currently facing the educational system in general and the school district in particular, where the school board members take no official action to resolve specific problems of the school district, constitute "meetings" under the Minnesota Open Meeting Law.

(2) Whether the Minnesota Open Meeting Law is unconstitutionally vague or overbroad.

(3) Whether a superintendent of schools is subject to the penalties of the Minnesota Open Meeting Law.

1. Appellants contend that the gatherings attended by the members of the school board and some of the administrators of District 742 Community Schools violated the Minnesota Open Meeting Law, Minn. Stat. § 471.705 (1982).[1] Respondents claim,

1. Minn.Stat. § 471.705 (1982) provides in relevant part:

Subdivision 1. Except as otherwise expressly provided by statute, *all meetings,* including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact pub-

lic business in a meeting, and the governing body of any school district however organized, unorganized territory, county, city, town, or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public, except meetings of the board of pardons

and the trial court concluded, that the meetings were not within the scope of the Open Meeting Law because there were no deliberations on pending matters, no decisions or pre-decisions were made, and no attempt was made to reach a consensus on matters being discussed. The trial court also concluded that the term "meetings," as used in the statute, does not include "seminars" at which factual information is presented for the education of school board members on different aspects of school administration.

Neither the legislature nor this court has defined the term "meeting" as used in Minn.Stat. § 471.705. Past decisions of this court which have construed the Open Meeting Law are helpful, however, in analyzing the purpose of the statute. The legislature does not set out a statement of policy or purpose in the statute. This court has stated that the purposes of the statute are: (1) "to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences," *Lindahl v. Independent School District No. 306,* 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965); (2) "to assure the public's right to be informed," *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 313, 215 N.W.2d 814, 821 (1974); and (3) "to afford the public an opportunity to present its views to the board," *Sullivan v. Credit River Township,* 299 Minn. 170, 175, 217 N.W.2d 502, 506 (1974). We must decide whether the legislature intended to include "administrative seminars" of the sort here involved within the ambit of a "meeting" of the governing body of any school district under § 471.705.

It is undisputed that the school board is the governing body of Community School District 742. It is also conceded that the gatherings here in question were *not* open to the public, as no notice was given. *See, Sullivan v. Credit River Township,* 299 Minn. 170, 217 N.W.2d 502 (1974). Thus, if the "administrative seminars" were "meetings" under § 471.705, the sanctions of that statute are applicable. We hold that, while it may be in the best interest of the public to close certain meetings of public bodies, the reasons for electing not to open the meetings at issue in this case are outweighed by the public's right to be informed.

■ Open meeting statutes are enacted for the public benefit and are to be construed most favorably to the public. *Greene v. Athletic Council of Iowa State University,* 251 N.W.2d 559, 560 (Iowa 1977); *Laman v. McCord,* 245 Ark. 401, 404–05, 432 S.W.2d 753, 755 (1968). This principle is reflected in the liberal construc-

---

and the corrections board. The votes of the members of such state agency, board, commission or department or of such governing body, committee, subcommittee, board, department or commission on any action taken in a meeting herein required to be open to the public shall be recorded in a journal kept for that purpose, which journal shall be open to the public during all normal business hours where such records are kept. The vote of each member shall be recorded on each appropriation of money, except for payments of judgments, claims and amounts fixed by statute. This section shall not apply to any state agency, board, or commission when exercising quasi-judicial functions involving disciplinary proceedings.
    \*    \*    \*    \*    \*    \*
    Subd. 2. Any person who violates subdivision 1 shall be subject to personal liability in the form of a civil penalty in an amount not to exceed $100 for a single occurrence. An action to enforce this penalty may be brought by any person in any court of competent jurisdiction where the administrative office of the governing body is located. Upon a third violation by the same person connected with the same governing body, such person shall forfeit any further right to serve on such governing body or in any other capacity with such public body for a period of time equal to the term of office such person was then serving. The court determining the merits of any action in connection with any alleged third violation shall receive competent, relevant evidence in connection therewith and, upon finding as to the occurrence of a separate third violation, unrelated to the previous violations issue its order declaring the position vacant and notify the appointing authority or clerk of the governing body. As soon as practicable thereafter the appointing authority or the governing body shall fill the position as in the case of any other vacancy. (Emphasis added.)

tion generally accorded such statutes. *See* Annot., 38 A.L.R.3d 1070, 1075 (1971).

The belief that the public is entitled to greater access to meetings of government bodies has inspired all 50 states to pass statutes that require certain public agencies to conduct all official meetings in sessions open to the public. Note, *The Minnesota Open Meeting Law After Twenty Years—A Second Look,* 5 William Mitchell L.Rev. 375 (1979). Every state has thus faced the difficult issue of defining which meetings are required to be open under the law. Each legislature that chooses to enact an open meeting law must select between the position that everything not specifically closed is opened and the position that everything not specifically opened is closed. Minnesota has opted for the former position, as have the majority of other jurisdictions. Commentators, in approving a presumption of openness, have said:

> Although it might not be empirically demonstrable, it seems intuitively certain that openness produces better governmental programs, more efficiency in government, and government more responsive to public interest and less susceptible to corruption than does secrecy. A free, literate and otherwise informed public should ask for and should be satisfied with nothing less than openness in every level of government. Consequently, the authors opt for a law that opens governmental decision making except as explicitly closed. In choosing this position, we are neither blinded to other public interests that sometime require temporary confidentiality nor tempted to use it as a shibboleth to justify insensitive intrusions into the freedom of the people it is intended to regulate. The limits and exceptions to openness must be carefully and narrowly defined.

Little & Tompkins, *Open Government Laws: An Insider's View,* 53 N.C.L.Rev. 451, 475 (1974).

The presumption of openness under the Minnesota Open Meeting Law is evidenced by the statutory language which states that "*all* meetings * * * shall be open to the public" (emphasis added). Minn.Stat. § 471.705. In addition, when the legislature saw fit to draft a specific exception to the Open Meeting Law for labor negotiation strategy meetings, it carefully placed stringent restraints on the exception in order to avoid abuse by those public agencies availing themselves of the opportunity to conduct closed meetings. *See* Minn.Stat. § 471.705, subd. 1a (1982).

This court used similar restraint in allowing a very limited exception to the Open Meeting Law for attorney-client meetings. In *Minneapolis Star and Tribune Co. v. The Housing and Redevelopment Authority in and for the City of Minneapolis,* 310 Minn. 313, 251 N.W.2d 620 (1976), the court stated:

> The attorney-client exception discussed herein would almost never extend to the mere request for general legal advice or opinion by a public body in its capacity as a public agency. We cannot emphasize too strongly that should this exception be applied as a barrier against public access to public affairs, it will not be tolerated, for this court has consistently emphasized that respect for and adherence to the First Amendment is absolutely essential to the continuation of our democratic form of government. It will be upheld, however, if the balancing of these conflicting public policies dictates the need for absolute confidentiality. The exception is therefore available to satisfy the concerns expressed herein but is to be employed or invoked cautiously and seldom in situations other than in relation to threatened or pending litigation.

310 Minn. at 323–24, 251 N.W.2d at 626.

The Minnesota Legislature clearly intended that *all* meetings of public agencies be open, with rare and carefully restrained exception. Respondents argue, however, that the gatherings here in question were not meetings and, therefore, do not fall within the Open Meeting Law.

Other jurisdictions which have adopted a presumption of openness similar to that of Minnesota have also adopted, either legislatively or judicially, a broad definition of

what constitutes a "meeting" under their open meeting statutes. In *Bagby v. School District No. 1, Denver,* 186 Colo. 428, 528 P.2d 1299 (1974), the Colorado court rejected the contention that a "conference" at which no formal action was taken by a school district was not a violation of the state's open meeting laws, stating:

> We hold that regardless of whether formal action is taken, when a "conference" (or any other kind of gathering) is preceded by notice, and held with regularity at specific times and places for the purpose of discussing Board business, it is a "meeting" within the meaning of C.R.S. 1963, 3–19–1.

186 Colo. at 434, 528 P.2d at 1302.

The Wisconsin Supreme Court adopted a similar construction of the term "meeting" in *State ex rel. Lynch v. Conta,* 71 Wis.2d 662, 239 N.W.2d 313 (1976). In holding that closed meetings of the Joint Committee on Finance of the Wisconsin Legislature were in violation of the state's open meeting law, the court expressed its concern that, although no official action was taken at these "executive sessions," they were nevertheless an important part of the decision-making process of which the public had a right to be informed. The court stated:

> When the members of a governmental body gather in sufficient numbers to compose a quorum, and then intentionally expose themselves to the decision-making process on business of their parent body—*by the receipt of evidence, advisory testimony, and the views of each other—an evasion of the law is evidenced.* Some occurrence at the session may forge an open or silent agreement. When the whole competent body convenes, this persuasive matter may or may not be presented in its entirety to the public. Yet that persuasive occurrence may compel an automatic decision through the votes of the conference participants. The likelihood that the public and those members of the governmental body excluded from the private conference may never

be exposed to the actual controlling rationale of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision *could be influenced* dictates that compliance with the law be met.

71 Wis.2d at 685–86, 239 N.W.2d at 330–31 (emphasis added in part). *See also, State v. Swanson,* 92 Wis.2d 310, 315–16, 284 N.W.2d 655, 658 (1979) ("conference" convened for the purpose of *exchanging information* and not for purpose of exercising committee's responsibilities, authorities, or duties held to be in violation of open meeting law); *Orange County Publications, Division of Ottaway Newspapers, Inc. v. Council of Newburgh,* 60 A.D.2d 409, 415, 401 N.Y.S.2d 84, 89 (1978), *aff'd* 45 N.Y.2d 947, 411 N.Y.S.2d 564, 383 N.E.2d 1157 (1978) (legislature intended to include *every* step of the decision-making process); *Times Publishing Co. v. Williams,* 222 So.2d 470, 473 (Fla.1969) (legislature intended to affect *every* step of the decision-making process); *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors,* 263 Cal.App.2d 41, 50, 69 Cal.Rptr. 480, 487 (1968) ("Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices.").

■ The meetings which are the subject of the instant lawsuit were scheduled meetings involving all of the school board members. At those meetings discussions were held concerning matters which could foreseeably require final action by the board. This type of meeting is within the purview of the Minnesota Open Meeting Law.[2] The statute will be liberally construed in order to protect the public's right to full access to the decision-making process of public bodies governed by § 471.705. This includes meetings at which information is received which may influence later decisions of such bodies.

■ 2. Respondents argue that the Open Meeting Law is unconstitutionally

---

**2.** *But cf. Hubbard Broadcasting, Inc. v. City of Afton,* 323 N.W.2d 757 (Minn.1982) (meeting

between two council members was not a violation of Minn.Stat. § 471.705).

vague and overbroad, unconstitutionally interfering with their right of free speech and the right of freedom of association. These claims are without merit.

The Open Meeting Law does not violate the rights of free speech or free assembly under the First Amendment of the United States Constitution. These rights protect expression of ideas, not the right to conduct public business in closed meetings. Although there may be an effect on the free expression of ideas caused by the requirement that public meetings be open to the public, the legislature is justified in prescribing such openness in order to protect the compelling state interest of prohibiting the taking of actions at secret meetings where the public cannot be fully informed about a decision or it cannot detect improper influences. The law assures the public of its right to be informed of the reasons for decisions being made and provides the public with the opportunity to express its views. See *Lindahl v. Independent School District No. 306,* 270 Minn. 164, 133 N.W.2d 23 (1965); *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 215 N.W.2d 814 (1974); *Sullivan v. Credit River Township,* 299 Minn. 170, 217 N.W.2d 502 (1974).

■ The Minnesota Open Meeting Law does not apply to chance or social gatherings. It does not *prohibit* meetings of affected public bodies; it merely requires that such meetings be open to the public. As the Illinois court stated in *People ex rel. Difanis v. Barr,* 83 Ill.2d 191, 46 Ill.Dec. 678, 414 N.E.2d 731 (1980):

> We conclude that the General Assembly has adopted reasonable regulations with regard to public officials' rights of speech and assembly when those rights are balanced against the extremely important governmental interest of the public's right of access to public information. The Open Meetings Act does not prohibit political discussions between or among members of public bodies; thus there is no chilling effect upon political discussion.

83 Ill.2d at 209, 46 Ill.Dec. at 686, 414 N.E.2d at 739. The Minnesota Open Meeting Law is also a reasonable regulation of public officials' rights of free speech and association.

■ A statute is impermissibly vague when "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973), quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The statute here in question explicitly requires that "all meetings, including executive sessions, of * * * the governing body of any school district * * * shall be open to the public * * *." Minn. Stat. § 471.705. Although terms such as "meetings" and "executive sessions" may give rise to some dispute over their meaning, it is impossible to draft legislation that will be perfectly clear in *every* case. As the United States Supreme Court stated in *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973):

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

413 U.S. at 578–79, 93 S.Ct. at 2897.

■ In the instant case the school board should have been well aware that the meetings in question were required to be open to the public for several reasons. First, the broad statutory language requiring that all meetings, executive sessions, and meetings of any committee or subcommittee be open to the public creates a presumption of openness. The statute, by expressly including meetings of committees and subcommittees, gives fair warning that the deliberations of governing bodies are included within its proscription.

Second, the very narrow restraints placed on the attorney-client exceptions to the Open Meeting Law by this court in *Minneapolis Star and Tribune Co. v. The Housing and Redevelopment Authority in and for the City of Minneapolis,* 310 Minn. 313, 251 N.W.2d 620 (1976), and our reversal of eight exceptions to the Open Meeting Law created by the trial court in *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 215 N.W.2d 814 (1974), clearly indicated that the term "meetings" was to be broadly interpreted.

Finally, the Minnesota Attorney General, in Opin.Atty.Gen. 63–a–5, Oct. 28, 1974, advised that the Open Meeting Law must be interpreted as applying to deliberations as well as formal actions. In explaining what "deliberations" were, the Attorney General stated: "Council members may deliberate on governmental business in different ways, such as by exchanging views among themselves or by receiving reports or statements of fact or opinions from consultants, administrators, employees or private citizens who appear at council sessions." Thus, the Attorney General clearly advised that a meeting such as the meetings here in question must be open to the public.

■ 3. The trial court held that the superintendent of schools is subject to the requirements and penalties of the Minnesota Open Meeting Law because he is an ex-officio member of the school board. After the trial court issued its ruling, this court decided *Minnesota Education Association v. Bennett,* 321 N.W.2d 395 (Minn. 1982), where we rejected such a position.

■ The decision of the trial court finding that the September 22 and 23, 1980, and August 12 and 13, 1981, administrative seminars held by District 742 Community Schools were not meetings under the Minnesota Open Meeting Law and that a school superintendent is subject to the Open Meeting Law is reversed. We remand with instructions that District 742 Community Schools be enjoined from conducting future meetings in violation of the Open Meeting Law. Civil penalties not to exceed $100 are available under § 471.705, subd. 2. Al-

though good faith is no defense to the statute, it is properly considered by the trial court in defining the appropriate penalty. We recommend that any penalties imposed take into consideration the good faith of the school board members.

Reversed and remanded.

SIMONETT, Justice (concurring in part and dissenting in part).

The decisionmaking process advances along a continuum. Board members confer with others in various combinations, either casually or at appointed times, sometimes simply to be educated and sometimes to apply what they have learned to matters requiring collegial action. I should not think that all discussions along this continuum come within the proscription of the open meeting law, though the line is not easily drawn. To say, for example, that a board member may never talk to another board member outside of a duly called meeting about something that foreseeably could require board action in the future is unrealistic and chills speech unnecessarily and perhaps unconstitutionally. On the other hand, to allow exceptions to the open meeting law raises the fear that the exceptions will be abused, particularly since only the board members can say what they did or did not do at a closed gathering.

It is true that Little and Tompkins, the commentators quoted in the majority opinion, "opt for a law that opens governmental decision making except as explicitly closed." But this has to be read in the context of their article. The authors also say, "In the face of an all-is-open statute with no exceptions, difficult problems can be placed upon governmental bodies." *See* Little & Tompkins, *Open Government Laws: An Insider's View,* 53 N.C.L.Rev. 451, 457 (1974). Thus, in their proposed model law, in addition to certain exceptions, the authors provide, for example, that "[n]othing herein shall make illegal informal discussions, either in person or telephonically, between members of public bodies for the purpose of obtaining facts and opinions provided that there is no in-

tention of violating [the law] * * *." *Id.* at 485.

Minn.Stat. § 471.705 (1982), on its face, is an "all-is-open" statute with no exceptions except those engrafted by this court in *Minneapolis Star & Tribune Co. v. The Housing and Redevelopment Authority,* 310 Minn. 313, 251 N.W.2d 620 (1976), and the recent labor negotiations strategy meeting exception. It is evident, however, from the statutory history that the legislature, rather than try, as in some states, to draft language to cover all conceivable situations, chose to enact a simple statute in direct language with the expectation that situations at the remote end of the decisionmaking continuum would be subject to judicial interpretation in a particular factual setting.[1] Thus, in *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 215 N.W.2d 814 (1974), this court suggests that the open meeting law might be judicially construed to allow for exceptions in keeping with legislative intent but that this court would not do so except in a factual setting presented by litigants.

In my view, if board members meet with administrators or others for background information and general study, and specific district problems are mentioned, if at all, only in an illustrative sense, this kind of gathering is not a meeting as contemplated by Minn.Stat. § 471.705 (1982). The seminar-type discussion that takes place at such a meeting is not the kind that ordinarily and appropriately occurs at an open public meeting. *See* Little & Tompkins, *id.* at 485. Nor is it the type of discussion that impairs the public's right of input in the decisionmaking process, since it occurs at such a remote stage of that process. Neither is it the type of discussion that impairs the public's right "to become fully informed concerning board decisions," nor is it the kind of discussion that lends itself to "improper influences." *See Lindahl v. Independent*

*School District No. 306,* 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965).

I would affirm the trial court's ruling that the Sunwood Inn seminar did not violate the open meeting law. That seminar was attended by eight administrators plus high school principals, plus the school board members. It was more a meeting of administrators to which board members were invited than a board meeting to which administrators were invited. The Sunwood agenda was general and educational in context. The school board was not meeting as a board to transact public business. On the other hand, it seems to me the Alexandria seminar is different. Only four administrators were in attendance with the board. Among other things, the Area Learning Center was discussed at Alexandria, a matter of more than background interest at the time. Also, some of the matters on the agenda would appear to have a bearing on teacher contract negotiations then in progress. As to the Alexandria seminar, I do not think that the trial court's finding that "[t]he seminar was not directed toward resolving specific problems of the school district" is sustainable under the evidence. There were items on the Alexandria agenda that went beyond the customary background and educational content presented at an administrative seminar and which appropriately would appear on the agenda of an open public meeting. As to the Alexandria seminar, therefore, I join the majority to reverse.

KELLEY, Justice (concurring in part and dissenting in part).

I join in the concurring and dissenting opinion of Justice SIMONETT.

---

1. Thus, in the House floor debate on May 18, 1973, in response to an inquiry if a meeting of city council members with their legislators to review legislation would be covered, the bill's author replied, "I would say no, but I guess I am not a judge and couldn't make that decision." Later, in response to another inquiry as to whether a DFL or I–R caucus meeting of the Minneapolis City Council would be covered, the bill's author answered, "[I]t is my understanding that it would not. There is no business conducted at caucuses and the bill is not intended to cover caucuses." *See* Respondents' Brief, Appendix, A–16, A–23.