**NORTHWEST PUBLICATIONS, INC., petitioner, Respondent,**

v.

**CITY OF SAINT PAUL, et al., Appellants.**

**No. C2-88-1474.**

Court of Appeals of Minnesota.

Jan. 17, 1989.
Review Denied March 29, 1989.

Michael J. Vanselow, Oppenheimer, Wolff & Donnelly, St. Paul, for respondent.

Edward P. Starr, City Atty., Philip B. Byrne, Asst. City Atty., St. Paul, for appellants.

Patricia Hirl Longstaff, Associate Gen. Counsel, Star Tribune, Mark Anfinson, Minnesota Newspaper Assn., Minneapolis, for amicus curiae.

Heard, considered and decided by FOLEY, P.J., and NORTON and FLEMING *, JJ.

OPINION

NORTON, Judge.

The City of St. Paul and the St. Paul City Council appeal from a preemptory writ of mandamus ordering that a city council meeting for discussion of proposed city ordinance amendments be open to the public. We affirm.

* Acting as judge of the Court of Appeals by ap-

FACTS

For several months the St. Paul City Council had been considering proposed changes in city ordinances relative to on-sale liquor establishments and nude dancing. The proposed amendments intend to prevent liquor establishment patrons from viewing nude dancers through glass partitions which separate the liquor establishment from adjacent unlicensed premises.

The proposed amendments have undergone several changes during the hearing process. Some suggested changes have been controversial. One proposal would require license applicants to obtain the support of 60% of the property owners within 200 feet of the liquor establishment before the city council would consider the license applications. Attorneys for four affected businesses have submitted briefs to the city council in opposition to the proposed amendments.

On June 7, 1988, the city council scheduled a closed meeting for June 14, 1988. According to Assistant St. Paul City Attorney Philip Byrne the purpose of the meeting was to discuss threatened litigation over the proposed ordinances, including the strengths and weaknesses of the positions and issues involved.

On June 13, 1988, respondent brought a petition for a writ of mandamus. Respondent sought an order directing the city council to open the June 14 meeting to the public. The trial court heard arguments on the petition on the 13th, and issued its memorandum and order for a peremptory writ of mandamus later that day. The order directed the city council to open the scheduled meeting to the public. The city council did not hold a closed session on June 14, 1988.

On appeal, appellants contend that because litigation is threatened, the city council was entitled to close its meeting under the attorney-client privilege exception to the Minnesota Open Meeting Law.

The trial court stated that litigation over the proposed amendments was "a virtual certainty." The court determined, how-

pointment pursuant to Minn. Const. art. VI, § 2.

ever, that the advice the city attorney sought to give the council was general legal advice. Accordingly, the court determined that the proposed discussions were not subject to the attorney-client privilege. The trial court further stated that even if privileged matters were to be discussed, the city must demonstrate that the need for confidentiality outweighed the right of the public to have access to public affairs. The city failed to make such a showing. The trial court concluded that in this case the need for confidentiality was outweighed by the public's right of access.

## ISSUES

I. Did the trial court err in determining that the attorney-client privilege exception to the open meeting law did not apply?

II. Must a governing body demonstrate that the need for confidentiality outweighs the public's right of access in order to hold a closed meeting?

## ANALYSIS

### Standard of Review

A trial court's order in a mandamus case will be reversed only where there is no evidence reasonably tending to sustain its finding. *Tyo v. Ilse*, 380 N.W.2d 895, 897 (Minn.Ct.App.1986) (citing *State ex rel. Banner Grain Co. v. Houghton*, 142 Minn. 28, 30, 170 N.W. 853, 853 (1919)). In deciding issues of law, the appellate court is not bound by the trial court's conclusions. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977). A reviewing court, however, is bound to accept the trial court's conclusions of law based on findings that are not clearly erroneous. *In re Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988).

### I.

The Minnesota Open Meeting Law provides in part that:

> Except as otherwise expressly provided by statute, all meetings, including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and the governing body of any school district however organized, unorganized territory, county, city, town, or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public, * * *

Minn.Stat. § 471.705, subd. 1 (1986).

The Minnesota Supreme Court has identified the purposes of the Minnesota Open Meeting Law as (1) "to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning * * * decisions or to detect improper influences," *Lindahl v. Independent School District No. 306*, 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965); (2) "to assure the public's right to be informed," *Channel 10, Inc. v. Independent School District No. 709*, 298 Minn. 306, 313, 215 N.W.2d 814, 821 (1974); and (3) "to afford the public an opportunity to present its views" in matters of public concern, *Sullivan v. Credit River Township*, 299 Minn. 170, 175, 217 N.W.2d 502, 506–07 (1974).

The Open Meeting Law is to be liberally construed in order to protect the public's right to full access to the decision-making process of public bodies. *St. Cloud Newspapers v. District 742 Community Schools*, 332 N.W.2d 1, 6 (Minn.1983).

A limited exception to the Open Meeting Law exists for attorney-client meetings. *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Authority*, 310 Minn. 313, 251 N.W.2d 620 (1976) (*HRA*). The court in *HRA* held that the Open Meeting Law did not require that a meeting between an agency and its counsel be open to the public where the meeting was for the purpose of discussing litigation strategy. In *HRA*, the housing authority had been sued and was involved in immediate, active litigation.

While the attorney-client privilege exception is operable to implement the confidentiality of the attorney-client relationship, the exception will almost never extend to the mere request for general legal advice

or opinion. *Id.* at 323–24, 251 N.W.2d at 626. Application of the exception as a barrier against public access to public affairs will not be tolerated. *Id.* at 324, 251 N.W.2d at 626.

■ Appellants claim that the trial court erred by failing to allow a closed meeting under the attorney-client exception to the Open Meeting Law. Appellants argue that a closed meeting should be permitted when a governing body seeks to avoid potential litigation. Appellants rely on *Sutter Sensible Planning, Inc. v. Sutter County Board of Supervisors,* 122 Cal.App.3d 813, 176 Cal.Rptr. 342 (1981). In *Sutter,* the county board held a closed session to discuss an environmental impact statement opposed by a community group. The court approved the meeting under circumstances where the board reasonably inferred the threat of litigation.

We decline to adopt the reasoning of the California court. It is not clear that closure of public meetings reduces the risk of future litigation. In *Sutter,* litigation ensued despite the county board's closed session. In some situations, the only feasible way to avoid litigation may be to abandon enactment of controversial proposals. The decision whether to adopt or abandon a proposal, however, is just the sort of decision which should be made openly.

Moreover, we believe that *Sutter* is inconsistent with the purposes of the Minnesota Open Meeting Law. The Open Meeting Law states that "all meetings * * * shall be open to the public." Minn.Stat. § 471.705, subd. 1. The statutory language evidences a presumption of openness. *St. Cloud Newspapers,* 332 N.W.2d at 5. The Minnesota Supreme Court has stated that the legislature intended that all meetings of public agencies be open, with "rare and carefully restrained exception." *Id.*

■ Appellants further contend that the trial court erred by characterizing the advice sought to be given by the city attorney as "general legal advice." The trial court found that the purpose of the scheduled closed meeting was to discuss strengths and weaknesses of the proposed amendments, positions likely to be taken by potential litigants, and the chances of prevailing in future litigation. The trial court reasoned that advising governmental bodies of the constitutionality of proposed enactments and the likelihood of success in the event of a future challenge is basic legal advice common to the deliberative process of any public body. Consequently, the trial court concluded that the attorney-client privilege exception did not apply to the discussions at issue. We agree. The attorney-client exception properly applies when a governing body seeks legal advice concerning litigation strategy. The privilege is not available, however, when a governing body seeks instead to discuss the strengths and weaknesses of the underlying proposed enactment which may give rise to future litigation.

## II.

■ The trial court determined that even if privileged matters were to be discussed, it would be incumbent on the city to demonstrate that the need for confidentiality outweighs the right of the public to have access to public affairs. Appellants contend that when litigation is pending or threatened, no showing of the need for confidentiality is required. We do not disagree with the trial court's interpretation of *HRA* to require a demonstration of the need for confidentiality.

The attorney-client exception will be upheld "if the balancing of [the] conflicting public policies dictates the need for absolute confidentiality." *HRA,* 310 Minn. at 324, 251 N.W.2d at 626. The court in *HRA* sanctioned a closed meeting only after a thorough consideration of the record, which disclosed that members of the agency were involved in active litigation in their capacities as members of a public agency. The court based application of the attorney-client privilege exception on an assessment of specific facts and not only on the existence of litigation. We believe that the court contemplated a balancing of interests when a public body seeks to hold a closed meeting. The public body must demonstrate that a legitimate need for confiden-

tiality requires closure. Many actions considered by public bodies may pose a risk of future litigation. Sensitive or controversial issues are especially likely to face opposition. These very issues, however, require public participation in the decision-making process. A showing by the governing body that the need for confidentiality outweighs the public's right of access is a reasonable protection of the public interest.

In the present case, the trial court determined that no such need for confidentiality justified closure of the scheduled meeting. The trial court impliedly recognized that this case did not present the specific facts of *HRA*. Considering the high standard of review in a mandamus case, we cannot say that the trial court erred in ordering the scheduled city council meeting be opened to the public. To agree with appellants has the potential for a creeping expansion of the attorney-client privilege exception. The strong Minnesota policy in favor of openness, as well as important First Amendment overtones in the Open Meeting Law, require that exceptions to this law be narrowly construed.

## DECISION

The trial court correctly determined that the attorney-client privilege exception to the open meeting law was inapplicable. The trial court was also correct in concluding that a governing body which seeks to close a public meeting must demonstrate that the need for confidentiality outweighs the public's right of access to public affairs.

AFFIRMED.