**SOUTHERN MINNESOTA MUNICIPAL POWER AGENCY, Respondent,**

v.

**Bill BOYNE, et al., Appellants.**

No. C5–96–2325.

Court of Appeals of Minnesota.

May 27, 1997.

Review Granted July 28, 1997.

Raymond A. Hayward, Julie Anne Rich, Dorsey & Whitney LLP, Rochester, for Respondent.

Mark R. Anfinson, Minneapolis, for Appellants.

Considered and decided by DAVIES, P.J., and KALITOWSKI and MARTIN J. MANSUR,* JJ.

## OPINION

KALITOWSKI, Judge.

On appeal from summary judgment, appellants argue that the Southern Minnesota Municipal Power Agency is subject to the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1996), and the Minnesota Data Practices Act, Minn.Stat. §§ 13.01–.99 (1996).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Municipal power agencies are created pursuant to and governed by Minn.Stat. §§ 453.51–.62 (1996). The purpose of chapter 453 is to provide a means for Minnesota cities that own and operate a utility to secure an adequate, economical, and reliable source of energy. Minn.Stat. § 453.51. Two or more cities can create a separate entity "to finance and acquire facilities for the generation or transmission of electric energy." *Id.*

Respondent Southern Minnesota Municipal Power Agency (SMMPA) is a municipal power agency that supplies electric power at wholesale to its 18 member cities, which in turn distribute the electric power to their respective customers. Appellants include newspaper publishers and journalists who periodically requested notice of SMMPA's board meetings.

SMMPA sought a judicial declaration that the meetings of its board of directors are not subject to the Minnesota Open Meeting Law (Law). Appellants filed a counterclaim alleging that SMMPA was subject to both the Law and the Minnesota Data Practices Act (Act). The parties filed cross-motions for summary judgment, and the district court granted SMMPA's motion concluding that the Law does not apply to SMMPA and, in the alternative, even if the Law does apply, SMMPA is exempt from it because of the language in SMMPA's enabling legislation. The district court also concluded SMMPA is not subject to the Act.

## ISSUES

1. Are municipal power agencies subject to the Minnesota Open Meeting Law?

2. Are municipal power agencies subject to the Minnesota Data Practices Act?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court must determine whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The

pointment pursuant to Minn. Const. art. VI, § 10.

reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The construction of a statute is a question of law fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

## I.

On appeal, both parties agree that the issue of whether SMMPA is subject to the Law turns on statutory interpretation. The Minnesota Open Meeting Law, Minn.Stat. § 471.705, subd. 1 (1996), states:

> **Presumption of openness.** *Except as otherwise expressly provided by statute, all meetings,* including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and *the governing body of any* school district however organized, unorganized territory, county, city, town, or *other public body,* and of any committee, subcommittee, board, department or commission thereof, shall be open to the public, except meetings of the commissioner of corrections.

(Emphasis added.) In applying the Law our initial inquiry is whether the entity in question, here a municipal power agency, is subject to the requirements of the Law. If, by its terms, the Law applies we must then determine whether there is an express exemption that exempts the municipal power agency from the requirements of the Law.

### A. Does the Law apply to SMMPA?

The Law applies to

> *the governing body of any* school district however organized, unorganized territory, county, city, town, or *other public body,* and of any committee, subcommittee, board, department or commission thereof * * *.

*Id.* (emphasis added). A municipal power agency is defined as "a separate political subdivision and municipal corporation created by agreement between or among two or more cities pursuant to section 453.53." Minn.Stat. § 453.52, subd. 8 (1996). In addi-

tion, the statute requiring an agency agreement between the cities states:

> That the municipal power agency is created and incorporated under the provisions of sections 453.51 to 453.62 as a municipal corporation and a political subdivision of the state, to exercise thereunder a part of the sovereign powers of the state.

Minn.Stat. § 453.53, subd. 1(1) (1996). This language mirrors the powers granted to a municipal power agency by Minn.Stat. § 453.54, subd. 1 (1996), which provides:

> A municipal power agency shall have all of the powers enumerated in this section, in furtherance of the purpose stated in section 453.51, and in the exercise thereof shall be deemed to be performing an essential governmental function and exercising a part of the sovereign powers of the state of Minnesota.

■ Notwithstanding the statutory language declaring SMMPA to be "a political subdivision of the state" "deemed to be performing an essential governmental function," the district court held that SMMPA was not a public body and therefore was not subject to the Law. The court reached this conclusion by reading the statutory enumeration of the entities to whom the Law applies and applying the rule of *ejusdem generis.* The rule of *ejusdem generis* requires

> that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, the general words are construed to embrace only persons or things of the same general kind or class as those before enumerated.

*Kaiser v. Memorial Blood Ctr. of Minneapolis, Inc.,* 486 N.W.2d 762, 766 (Minn.1992) (quoting Francis J. McCaffrey, *Statutory Construction* § 16, at 41 (1953)); *see also* Minn.Stat. § 645.08(3) (1996) (general words construed to be restricted in their meaning by preceding particular words). Applying this rule, the district court concluded that because "SMMPA is not like a county, city, or town * * * the legislature did not include SMMPA under the Open Meeting Law."

■ We disagree with the district court's reasoning and conclusion. The supreme court has noted:

[C]anons of construction are not the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent.

*Wegener v. Commissioner of Revenue,* 505 N.W.2d 612, 614 (Minn.1993) (quoting *Winters v. City of Duluth,* 82 Minn. 127, 129, 84 N.W. 788, 789 (1901)). Accordingly, *ejusdem generis* is to be used "only as an aid in ascertaining the legislative intent, and when that is apparent from the statute itself the rule has no application." *Winters,* 82 Minn. at 129, 84 N.W. at 789. The most basic canon of statutory construction is that "[w]ords and phrases are construed according * * * to their common and approved usage." Minn.Stat. § 645.08(1) (1996). Here, the legislature's use of the term "other public body," by its plain meaning indicates an intent to include a broad range of public entities that goes beyond the district court's limitation to an entity like a county, city or town. Thus, there is no need to resort to the doctrine of *ejusdem generis.*

In addition, even if we apply *ejusdem generis,* we reach a different conclusion than the district court. The district court failed to include all of the entities named in the statute directly preceding "other public bodies." Specifically, the district court did not consider the governing bodies of any "school district however organized" and "unorganized territory" when applying the doctrine. In addition, the district court did not acknowledge that the statute included the committees, subcommittees, boards, departments, and commissions of all enumerated public bodies. Because these entities are also included in the list of public bodies subject to the Law, their characteristics would have to be considered in applying *ejusdem generis.*

The committees, subcommittees, boards, departments, and commissions of the named public bodies do not all have the power to govern, legislate, or tax. As such, contrary to the district court's contention, the fact that a municipal power agency does not have these powers is not determinative. Rather, a municipal power agency is similar to a committee, subcommittee, board, department, or commission of a school district, unorganized territory, county, city, or town in that it is

created to deal with a particular area, issue, or problem. Further, the inclusion of the committees, subcommittees, boards, departments, and commissions of the named entities, in addition to the broad "other public body" language, evinces an intent by the legislature to make an expansive range of public entities subject to the Law.

A plain reading of chapter 453 and the Law leads us to conclude that because the statutorily defined purpose, powers, definition, and function of a municipal power agency fit under the broad category of "other public body" in the Law, SMMPA is subject to the Law.

### B. Is SMMPA exempt from the Law?

■ Having determined that SMMPA is a public body under the Law, application of the Law's requirements to SMMPA is mandated unless "otherwise expressly provided by statute." Minn.Stat. § 471.705, subd. 1. The district court concluded that the provisions in SMMPA's enabling legislation provide the necessary express exemption from the Law. We disagree.

In reaching its conclusion, the district court relied primarily on the provision stating that a municipal power agency

> generally may exercise in connection with its property and affairs, and in connection with property within its control, any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.

Minn.Stat. § 453.54, subd. 21 (1996). In addition, the district court noted that: (1) Minn. Stat. § 453.62, subd. 1 (1996), provides for a liberal construction of the laws governing municipal power agencies to effectuate its legislative intent and purpose; and (2) Minn. Stat. § 453.62, subd. 2 (1996), provides the chapter creating municipal power agencies prevail in the event of conflict or inconsistency with other laws.

■ We conclude that the provisions in chapter 453 do not constitute the required express exemption to the Law. First, we note the Law "was enacted for the public benefit" and should be liberally construed. *St. Cloud*

*Newspapers, Inc. v. District 742 Community Schools,* 332 N.W.2d 1, 4–5 (Minn.1983). Second, the language giving municipal power agencies all the powers of a private corporation is a general provision that does not expressly include the right to close meetings. As this court has noted, "every recognized statutory exception to the Open Meeting Law contains explicit language clearly indicating its purpose." *Itasca County Bd. of Comm'rs v. Olson,* 372 N.W.2d 804, 808 (Minn.App. 1985); *see, e.g.,* Minn.Stat. § 116O.03, subd. 6 (1996) (board of directors of Minnesota Technology Inc. may by majority vote in a public meeting decide to hold a closed meeting); Minn.Stat. § 383B.217, subd. 7 (1996) (Hennepin county board on behalf of medical center may meet in closed session if disclosure of information would clearly harm competitive position of medical center); Minn.Stat. § 144.581, subd. 5 (1996) (public hospital or organization organized under this section may hold closed meeting to discuss specific subjects that would cause harm to competitive position of hospital or organization). Third, the intent and purpose of chapter 453 is to provide a means for Minnesota cities to provide an adequate economical and reliable supply of energy. Minn.Stat. § 453.51. It is undisputed that the cities authorized to create municipal power agencies are subject to the Law. We find nothing inherent in the operation of municipal power agencies that requires that they operate in closed meetings in order to effectuate the intent of the statute. Fourth, because there is no express reference to either the Law or the need to have closed meetings in chapter 453, there is not a conflict or inconsistency between SMMPA's enabling legislation and the Law.

Finally, SMMPA argues that it will suffer a competitive disadvantage if it is required to conduct its business in open meetings. This policy argument is more appropriately addressed to the legislature. As noted above, the legislature has specifically referenced competition in enacting express exemptions to the Law. *See* Minn.Stat. § 383B.217, subd. 7 (Hennepin county board on behalf of medical center may meet in closed session if disclosure of information would clearly harm competitive position of medical center); Minn. Stat. § 144.581, subd. 5 (public hospital

or organization organized under this section may hold closed meeting to discuss specific subjects that would cause harm to competitive position of hospital or organization).

In conclusion, because we have determined SMMPA is a public body subject to the terms of the Law and chapter 453 does not contain an express exemption to the requirements of the Law, we reverse the district court's determination that SMMPA is not subject to the Law.

## II.

The Minnesota Data Practices Act, Minn. Stat. §§ 13.01–.99 (1996), applies to "[a]ll state agencies, political subdivisions and statewide systems." Minn.Stat. § 13.01, subd. 1. The statute states:

> This chapter regulates the collection, creation, storage, maintenance, dissemination, and access to governmental data in state agencies, statewide systems, and political subdivisions. It establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public.

*Id.,* subd. 3. Further, the statute mandates that

> [a]ll government data collected, created, received, maintained or disseminated by a state agency, political subdivision, or statewide system *shall be public* unless classified by statute, or temporary classification pursuant to section 13.06, or federal law, as nonpublic or protected nonpublic, or with respect to data on individuals, as private or confidential.

Minn.Stat. § 13.03, subd. 1 (emphasis added). Government data is defined as

> all data collected, created, received, maintained or disseminated by any state agency, political subdivision, or statewide system regardless of its physical form, storage media or conditions of use.

Minn.Stat. § 13.02, subd. 7. A political subdivision is defined as "any county, statutory or home rule charter city, school district, special

district and any board, commission, district or *authority created pursuant to law." Id.,* subd. 11 (emphasis added).

■ The district court concluded the Act does not apply to SMMPA because municipal power agencies are not political subdivisions in that they are formed by agreements and not "created pursuant to law." We disagree. First, we note that municipal power agencies are expressly characterized in the enabling legislation as political subdivisions. Minn. Stat. § 453.53, subd. 1(1). In addition, the enabling legislation states that a municipal power agency is "a separate political subdivision and municipal corporation *created* by agreement between or among two or more cities *pursuant to* section 453.53." Minn. Stat. § 453.52, subd. 8 (emphasis added). The plain meaning of this section is that a municipal power agency is an "authority created pursuant to law." Finally, the fact that municipal power agencies are given the authority to exercise "a part of the sovereign powers of the state of Minnesota," Minn.Stat. § 453.54, subd. 1, supports our conclusion that municipal power agencies are political subdivisions subject to the Act. We therefore reverse the district court's conclusion that SMMPA is not subject to the Act.

## III.

■ Prior to oral argument in this matter, appellants made a motion to supplement the record with information regarding the legislative history of section 471.705. Because this information was not presented to the district court and is not necessary for our decision, we deny appellants' motion.

## DECISION

Southern Minnesota Municipal Power Agency, a municipal power agency formed pursuant to Minn.Stat. §§ 453.51–.62 (1996), is subject to both the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1996), and the Minnesota Data Practices Act, Minn.Stat. §§ 13.01–.99 (1996). Motion to supplement record denied.

**Reversed, motion denied.**

MARTIN J. MANSUR, Judge (dissenting).

I respectfully dissent. Because I believe that SMMPA is not a public body subject to the Minnesota Open Meeting Law, Minn. Stat. § 471.705, subd. 1 (1996), nor a political subdivision subject to the Minnesota Data Practices Act, Minn.Stat. §§ 13.01–.99 (1996), I would affirm the grant of summary judgment to SMMPA.

The Open Meeting Law (Law) requires that all meetings of the governing body of any "unorganized territory, county, city, town, or other public body" be open to the public. Minn.Stat. § 471.705, subd. 1. Applying the rule of *ejusdem generis,* we must construe the term "other public body" to include only those public bodies that share common characteristics with an unorganized territory, county, city, or town. Unlike the elected officials from a county, city, or town, municipal power agency officials are not elected by the general public. A municipal power agency does not have a territorial boundary and cannot levy and collect taxes. Any bonds sold must be exclusively paid for by the municipal power agency's revenues. The term "other public body" simply cannot be construed to include an agency so dissimilar to the enumerated entities. I conclude that the district court properly determined that SMMPA is not a public body within the meaning of the Law.

Moreover, the legislature specifically mandated that conflicts between the statutes controlling municipal power agencies, Minn.Stat. §§ 453.51–.62 (1996), and *any other law* shall be resolved in favor of municipal power agencies. Minn.Stat. § 453.62, subd. 2. To be sure, a municipal power agency is a municipal corporation and a political subdivision of the state. Minn.Stat. § 453.53, subd. 1(1). Nevertheless, the legislature clearly intended that a municipal power agency exercise the same powers as a similarly situated private corporation. Minn.Stat. § 453.54, subd. 21. This provision, coupled with the liberal construction of the laws governing municipal

power agencies, acts as an express exemption to the Law.

The activities of a municipal power agency are distinguishable from the activities of other organizations that have been explicitly granted a right to hold closed meetings under certain circumstances. For example, the primary focus of the activities of Minnesota Technology, Inc. "must be to benefit new or existing small and medium-sized businesses in greater Minnesota." Minn.Stat. § 116O.03, subd. 1a (1996). In contrast, SMMPA does not engage in policymaking or ratemaking; SMMPA simply buys power wholesale to resell to its customers. Unlike an entity discussing matters affecting the general public, and occasionally holding closed meetings to discuss sensitive financial matters, SMMPA's actions directly impact its own economic viability. It seems to me the legislature did not intend to provide this medium for municipalities to use in meeting certain energy needs and at the same time destroy a municipal power agency's competitiveness by exposing its business decisions to the public, which includes the competition.

With regard to the Data Practices Act (Act), I believe that a municipal power agency falls outside of the definition of a political subdivision because it is not an "authority created pursuant to law." Minn.Stat. § 13.02, subd. 11 (1996). Rather, the law *allows* for the creation of a municipal power agency. Minn.Stat. § 453.53, subd. 1. *Cf.* Minn.Stat. § 116.02, subd. 1 (1996) ("A pollution control agency * * * is hereby created."); Minn.Stat. § 462A.04, subd. 1 (1996) ("There is created a public body corporate and politic to be known as the 'Minnesota housing finance agency' "). I conclude that a municipal power agency is not a political subdivision within the meaning of the Act.

I believe that municipal power agencies are not subject to either the Open Meeting Law or the Data Practices Act, and thus SMMPA may close its board meetings to the public.