**STAR TRIBUNE, a division of Cowles Media Co., Respondent,**

v.

**BOARD OF EDUCATION, SPECIAL SCHOOL DIST. NO. 1, Appellant.**

No. C3–93–1014.

Court of Appeals of Minnesota.

Nov. 9, 1993.

Review Denied Dec. 22, 1993.

John P. Borger, Eric E. Jorstad, Faegre & Benson, and Randy M. Lebedoff, Cowles Media Co., Minneapolis, for respondent.

Eric J. Magnuson and J. Dennis O'Brien, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Considered and decided by ANDERSON, P.J., and SHORT and THOREEN *, JJ.

## OPINION

SHORT, Judge.

The Star Tribune (newspaper) sought a writ of mandamus to require the Board of Education, Special School District No. 1 (school board) to conduct in public all future meetings and hearings regarding a superintendent and two district employees. The trial court interpreted Minn.Stat. § 471.705, subd. 1d(c) and (e) (1992) to compel open meetings until litigation was commenced by those employees against the school board. On appeal from the issuance of the writ, the school board argues the judgment is overly restrictive and contrary to precedent. We reverse.

## FACTS

Questions of financial mismanagement in the Minneapolis public schools led to the resignation of the superintendent and his two highest-ranking aides. On January 26, 1993, the school board met in closed session to discuss "legal matters, personnel items, negotiations, and expulsions," and voted in open meeting, without comment, to accept the resignation of the superintendent's two aides. The state auditor described the settlement terms with the two aides as "obscene." On February 2, the school board met again in closed session to discuss "the allegations or charges against an employee of the school district and for the purpose of conferring with its counsel on matters of attorney-client privilege." The school board then in open session voted to suspend the superintendent with pay and to request his resignation.

Before adjourning, the school board scheduled a closed meeting for February 5 to discuss the investigation of the superintendent and to receive advice from counsel con-

cerning possible rescission of the settlement agreements with the two aides. The newspaper immediately petitioned for a writ of mandamus to compel the school board to conduct in public the February 5 and all future meetings and hearings about matters involving the superintendent and his former aides pursuant to Minn.Stat. § 471.705. The trial court granted a writ of mandamus providing that, if litigation is actually commenced between the school board and its superintendent or two aides, the board could meet in closed session to seek legal advice on litigation strategy pursuant to Minn.Stat. § 471.-705, subd. 1d(e).

On April 13, the school board appointed a hearing examiner to gather evidence and make recommendations regarding the superintendent. Determining that "litigation" had commenced, the school board held several closed meetings and eventually negotiated a settlement with the superintendent in May 1993.

## ISSUES

I. Does the school board's subsequent settlement with its superintendent render this appeal moot?

II. By ordering that all future meetings and hearings be open to the public, did the trial court misinterpret the attorney-client privilege exception to the Minnesota Open Meeting Law?

## ANALYSIS

The issue before us is whether the attorney-client privilege exception to Minn.Stat. § 471.705 is only available when litigation has been commenced. Because that question is solely one of law, we review de novo the trial court's decision. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ The newspaper argues this appeal is moot because the settlement between the school board and its superintendent renders

---

pointment pursuant to Minn. Const. art. VI, § 2.

further meetings or hearings unnecessary. We disagree. The settlement agreement with the superintendent imposes continuing obligations on the school board which may necessitate future meetings with legal counsel. Because the writ at issue compels the school board to open all future meetings concerning settlements with the former employees, our opinion will have a practical legal effect upon an existing controversy. *See Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969) (per curiam) (court will only decide questions with real consequences); *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984) (same).

Even if there were no continuing obligations under the settlement, the doctrine of collateral legal consequences would compel examination of the continuing effects of a challenged but completed action. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980). The trial court's order goes beyond the immediate case because it affects the school board's performance of future public duties. The writ determines how future discussions or meetings will be held and the procedures by which the school board gives public notice. *See, e.g., Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 178, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968) (appeal from a temporary restraining order is not moot even though the order expired because the order continued to play a substantial role in the response of officials to their activities); *Division 1287 of Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees v. Missouri*, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963) (seizure did not terminate labor dispute because the original issues remained unresolved); *see also State v. County of Hennepin*, 505 N.W.2d 294 (Minn.1993) (open meeting law case not moot because issues are of public concern and likely to have lasting repercussions). Under these circumstances, this appeal is not moot despite the school board's subsequent settlement with its superintendent.

## II.

The original version of the open meeting law did not contain a provision excepting attorney-client discussions from the public meetings requirement. *See* Minn.Stat. § 471.705, subd. 1 (1988) (meetings are to be open except as otherwise provided by statute). However, the judiciary recognized an implied exception for attorney-client discussions in the narrow circumstances of pending or prospective litigation. *Minneapolis Star & Tribune Co. v. Housing & Redev. Auth.*, 310 Minn. 313, 324, 251 N.W.2d 620, 626 (1976) [hereinafter *HRA*]; *see* Note, *The Minnesota Open Meeting Law After Twenty Years—A Look*, 5 Wm. Mitchell L.Rev. 375, 405–06 (1979) (discussing the history and evolution of the Minnesota Open Meeting Law and *HRA*). The court created a balancing test whereby a meeting should be closed only if the interest in maintaining confidentiality outweighs the public's interest in open discussion. *HRA*, 310 Minn. at 322–323, 251 N.W.2d at 625. A meeting may be closed pursuant to the attorney-client exception when a governing body seeks legal advice concerning litigation strategy, but not when the discussion focuses on the underlying merits of a proposed action that might give rise to future litigation. *Id.*

■ The legislature codified *HRA* in 1990 to provide that "meetings may be closed if the closure is expressly * * * permitted by the attorney-client privilege." Act of May 3, 1990, 1990 Minn.Laws ch. 550 § 2 (codified at Minn.Stat. § 471.705, subd. 1d(e)). While this provision does not expressly limit the attorney-client exception to the context of pending or threatened litigation, we presume the legislature intended to adopt the same construction as promulgated by the Minnesota Supreme Court. Minn.Stat. § 645.17(4) (1992); *see McDonald v. United States*, 89 F.2d 128, 133 (8th Cir.) ("[W]hen a statute uses words whose meaning under judicial decisions has become well-known and well-settled, it will be presumed that the Legislature used such words in the sense justified by long judicial sanction."), *cert. denied*, 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937); *Minnesota Wood Specialties, Inc. v. Mattson*, 274 N.W.2d 116, 119 (Minn.1978) ("Words and phrases which have acquired an established meaning by judicial construction are deemed to be used in the same sense in a

subsequent statute relating to the same subject matter."). To hold otherwise, namely that Minn.Stat. § 471.705, subd. 1d(e) incorporates the full attorney-client privilege contained in Minn.Stat. § 595.02, subd. 1(b) (1992), would make the exception for attorney-client discussions swallow the rule favoring public meetings. *See St. Cloud Newspapers v. District 742 Community Sch.,* 332 N.W.2d 1, 4–5 (Minn.1983) (courts should construe open meeting laws liberally to protect the public's interest in limiting governing secrecy and promoting knowledge of public enactments); *HRA,* 310 Minn. at 313, 251 N.W.2d at 625 (same).

█ When a public body can show that litigation is imminent or threatened, or when a public body needs advice above the level of general legal advice, i.e., regarding specific acts and their legal consequences, then the attorney-client exception applies. *HRA,* 310 Minn. at 324, 251 N.W.2d at 626; *Northwest Publications, Inc. v. St. Paul,* 435 N.W.2d 64, 67 (Minn.App.1989). The record in this case demonstrates: (a) the superintendent retained an attorney to protect his contract rights; (b) the school board was under public pressure to rescind the separation agreements with its two former employees; (c) the school board's discussions involved settlements of concrete disputes; (d) the school board sought advice from legal counsel on legal rights, obligations, and potential liabilities involving its superintendent and two former employees; and (e) no lawsuits had been commenced against the school board relating to those individuals. Under these facts, the trial court's interpretation of Minn.Stat. § 471.705, subd. 1d(e) erroneously reduced the application of the attorney-client privilege exception to a question of timing, not confidentiality. The attorney-client privilege exception to Minn.Stat. § 471.705 is available in circumstances where litigation is imminent, but not actually commenced.

## DECISION

This appeal is not moot because the school board has continuing obligations under its settlement agreement which might necessitate future meetings with legal counsel, and there are collateral legal consequences resulting from the issuance of the writ. Because the trial court misinterpreted Minn. Stat. § 471.705, subd. 1d(e) to apply only after litigation had commenced, we reverse and vacate the judgment of mandamus.

**Reversed.**