Barbara Ruth DEMMING, Plaintiff,

v.

HOUSING AND REDEVELOPMENT AUTHORITY OF DULUTH, MINNESOTA; Donald Zeh, Individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; Helen Horral, Individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; Violet Griffith, Individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN; and Nora Hakala, Individually and as a Commissioner of the Housing and Redevelopment Authority of Duluth, MN, Defendants.

Civ. No. 5–93–22.

United States District Court,
D. Minnesota,
Fifth Division.

Jan. 12, 1994.

Richard A. Williams, Jr., Hvass, Weisman & King, Minneapolis, MN, for plaintiff.

Robert H. Magie, III, Crassweller, Magie, Andresen, Haag & Paciotti, Duluth, MN, for defendants.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion to compel discovery.

A Hearing on the Motion was held on December 14, 1993, at which time the Plaintiff appeared by Richard A. Williams, Jr., Esq., and the Defendants appeared by Robert H. Magie, III, Esq.

For reasons which follow we deny the Motion to Compel on grounds of the attorney-client privilege.[1]

### II. *Factual and Procedural Background*

The Plaintiff, Barbara Ruth Demming ("Demming"), is a former Executive Director of Defendant Housing and Redevelopment Authority of Duluth ("HRAD"), which is a corporate body created pursuant to the laws of the State of Minnesota. By an Employment Agreement dated July 1, 1990, Demming was hired for the 18–month period[2] from December 1, 1991, until June 30, 1992. Each of the remaining Defendants are Commissioners of the HRAD.

At some point, apparently in late 1991, relations between Demming and the HRAD became strained. In anticipation of the HRAD's evaluation of her job performance, Demming wrote a letter to each of the Commissioners dated February 9, 1992. The letter makes clear that Demming was disappointed and dissatisfied with HRAD and that she was willing to continue as HRAD's Executive Director on condition that the Commissioners would accede to a series of seven demands. In the alternative, Demming expressed her intention to "immediately begin a job search." Demming went on to state:

> Finally, I need to advise you that your refusal to communicate with me, advise me of meetings, removing my authority, and conducting meetings with my staff without my knowledge or presence is defined as harassment. Unless you immediately cease and desist this behavior, I would have no qualms in seeking legal action.

By Notice dated February 18, 1992, HRAD advised that, on February 24, 1992, the Commissioners would be conducting a "Closed Session Committee of the Whole Meeting to evaluate the performance of the Executive Director."

In addition to HRAD's posted Notice, Bryan N. Anderson ("Anderson"), who serves as legal counsel to HRAD, advised Demming, by letter dated February 19, 1992, as follows:

> As you are, undoubtedly aware, the commissioners have scheduled a special closed meeting for the purpose of conducting an evaluation of your performance as Executive Director, consistent with the requirements in your employment contract. Since the subject of the evaluation also has privacy act implications, we have advised that the Board exercise its option under the Minnesota Statutes to conduct the meeting in closed session; nevertheless, you should be advised that under those same statutes, you do have the option to request that the meeting be opened.

The record is uncontested that Demming did not advise the HRAD, at any time, that she was interested in having an open meeting.

On February 24, 1992, the HRAD Meeting was held with Demming and the Defendants present, together with Anderson as HRAD's legal counsel. During the course of the session, the issue arose as to whether Demming should remain or should step outside. In the

---

1. By Order dated June 2, 1993, discovery in this matter was scheduled to be completed by January 1, 1994. By informal request, the parties have sought an extension of the discovery deadline until January 31, 1994. For good cause shown, the request will be granted.

2. We note that, in her Statement of the Case, Demming advises that her contract of employment with HRAD was for a period of 2 years. In contrast, the copy of her Employment Agreement, which is attached as Exhibit A to her Complaint, expressly denotes that it is for a period of 18 months in duration. In any event, this conflict in the evidence is unimportant to the issues before us.

course of discussing that issue, the following exchange occurred:

w:  Well I don't care if she stays in or out ah

BNA [Anderson]:  I guess from an attorney's standpoint I [am] going to make the statement at this time that obviously anything that were to be discussed in Barbara's presence would no longer be subject to the attorney-client privilege.  Additionally,

w:  Well I have a question I would like to ask you and the attorney.

BNA:  Additionally, I have a question

w:  Well if she is willing to step out why do we have to hassle that.

BNA:  I am just informing the board [of] that fact.

w:  Just so we don't take all night.

D:  We don't want to lose the attorney-client privilege.

B [Demming]:  I have no problem stepping out.

w:  Just so you get some definite answer tonight is that what your [sic] looking for Barbara.

B:  Yeah.

[Transcript at page 37].

At the conclusion of the closed session, Demming's employment at HRAD was terminated.  This action ensued.

Following the commencement of this action, Demming served a Request for Production of Documents which listed the following as Request No. 1:

All videotapes, minutes, or other documents reflecting meetings of the board of commissioners of the Housing and Redevelopment Authority of Duluth, Minnesota (hereinafter "HRAD").

HRAD's initial response was as follows:

Insofar as this request calls for materials that are protected by the attorney/client privilege and/or the attorney work product doctrine, the Defendants object to the request.

Prior to the Hearing on this Motion, HRAD supplemented its response to the Request No. 1 by stating:

The Defendants are in possession of a tape of a meeting (2/23/92) of the H.R.A.  The Defendants have transcribed that tape as best they are able to do so.  Portions of the tape, and transcription thereof, are not discoverable on the basis of the work product doctrine and/or the attorney/client privilege.

The entire transcript will be provided to the court, and the court can rule on the discoverability of the tape and transcript.

We understand that the transcript of the HRAD closed session has been furnished to Demming's counsel through page 37, and that HRAD seeks to preserve the confidential nature of the contents on the remaining 3 pages.

### III.  *Discussion*

The sole issue before us is whether pages 38 through 40 of the transcript of the HRAD's closed session meeting of February 24, 1992, are exempt from disclosure, under the Minnesota Open Meeting Law, Minnesota Statutes Section 471.705, by virtue of the attorney-client privilege.[3]  In arguing that no such privilege applies, Demming underscores that no litigation was then in existence, and that any properly cognizable attorney-client privilege was waived by HRAD when a letter from Anderson to HRAD, dated March 5, 1992, was voluntarily disclosed.  We address each of these arguments in turn.

1.  *Does The Attorney–Client Privilege Immunize From Disclosure, Under The Provisions Of The Minnesota Open Meeting Law, The Provision Of Specific Legal Advice By Legal Counsel To A Public Agency As To A Matter Which Is Not Presently In Suit, But In Which Litigation Is Threatened?*

■  In its recent decision in *Star Tribune v. Board of Education, Special School Dis-*

---

**3.**  No one seriously disputes that the meeting of February 24, 1992, was subject to the Opening Meeting provisions, that proper notice of the "closed session" was provided, that Demming voluntarily left the meeting after she had waived her statutory right to have the meeting opened to the public, or that Anderson served as legal counsel to HRAD.  Therefore, we will not further address those issues.

trict No. 1, 507 N.W.2d 869 (Minn.App.1993), pet. for rev. denied (Minn.1993), the Minnesota Court of Appeals answered this inquiry in the affirmative. There, as here, the Court was confronted with a public agency which had conducted a closed session in order to discuss an investigation concerning one of its employees and in order to receive legal advice from counsel. Notably, no litigation was pending at that time and, by virtue of a settlement of the dispute between the agency and its employee, no litigation was ever commenced. Overruling the Trial Court's decision to the contrary, the Court of Appeals determined that the attorney-client exception to the Minnesota Open Meeting Law applies "where litigation is imminent, but not actually commenced." *Id.* at 872. Accordingly, the Court held, "[w]hen a public body can show that litigation is imminent or threatened, or when a public body needs advice above the level of general legal advice, i.e., regarding specific acts and their legal consequences, then the attorney-client exception applies." *Id.* We would only add that the holding in *Star Tribune* was presaged by prior Minnesota precedent, legislative enactment, and common sense. See, *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Authority*, 310 Minn. 313, 251 N.W.2d 620, 626 (1976) (attorney-client exception available under Minnesota Open Meeting Law in "threatened or pending litigation"); *Minnesota Laws of 1990,* Chap. 550 § 2 (codified at Minnesota Statutes Section 471.705, Subdivision 1d(e)).

Here, we have closely reviewed the pertinent pages of the transcript of February 24, 1992, and we find that the discussion between Anderson and the Commissioners of HRAD was not generalized and unfocused, but was directed at specific legal acts and their potential legal consequences. Given the existence of Demming's forewarning that she was disgruntled, and was unhesitant about employing legal action to address what she regarded as HRAD's "harassment," we believe that HRAD was amply within its rights to solicit legal advice as to the manner in which the agency should best proceed. More importantly, we believe that the public policies advanced by a knowledgeably informed administrative agency are sufficiently worth-while as to warrant the preservation of those confidences despite the admittedly meritorious goals of the Open Meeting Law.

Accordingly, we hold that, unless the privilege was effectively waived, the discussions of Anderson and the Commissioners of the HRAD, on pages 38 through 40 of the February 24 transcript, are excepted from the provisions of the Minnesota Open Meeting Law, by the attorney-client privilege.

2. *Did HRAD Waive Its Attorney–Client Privilege?*

■ As we have noted, Demming contends that, even if an attorney-client privilege attached to the closed session of February 24, HRAD waived the privilege by voluntarily producing, during the course of discovery in this matter, a letter from Anderson to the HRAD, dated March 5, 1992. In pertinent part, the letter states:

> With respect to the unemployment benefits claim, I am recommending to the Commissioners at this time that the Authority not contest Ms. Demming's unemployment benefits for tactical reasons. If the Commissioners determine to adopt my recommendation it would seem that no response would be necessary to the unemployment claim. On the other hand, if they determine otherwise at Monday's meeting, I will submit proposed responses by fax to you on Tuesday.

According to Demming, the HRAD should not be permitted to selectively determine which of its confidences with counsel should be disclosed—ostensibly for strategic reasons—and which should be preserved. In response, HRAD urges that no legal advice was disclosed by Anderson's letter—that the "tactical reasons" were not generically legal in nature.

■ As a general proposition, we agree that it is unfair to permit a party to make use of privileged information as a "sword" with the public, and then as a "shield" in the courtroom. *In re von Bulow*, 828 F.2d 94, 101 (2d Cir.1987); *Teachers Insurance and Annuity Association v. Shamrock Broadcasting Company, Inc.*, 521 F.Supp. 638, 641 (S.D.N.Y.1981); *Swanson v. Domning*, 251 Minn. 110, 86 N.W.2d 716 (1957). Neverthe-

less, such unfairness does not arise from every disclosure of an exchange between a lawyer and his or her client. Here, the fact that HRAD did not oppose Demming's unemployment benefits claim does not reveal any substantive legal advice, but merely conveys the obvious—that HRAD was not oblivious to Demming's unemployment compensation claim and that it had a right to interpose an objection. Even if construed as legal advice, the "advice" did not relate to the bases, factual or legal, for Demming's termination by HRAD.[4] We are aware of no authority, and Demming has not identified any, which recognizes a general waiver of all attorney-client privileges as a result of a disclosure of an attorney's legal advice on an unrelated subject.[5]

As a consequence, we conclude that the HRAD did not waive its attorney-client privilege by voluntarily disclosing Anderson's letter of March 5, 1992, and that, accordingly, Demming's Motion to Compel should be denied.

NOW, THEREFORE, It is—

ORDERED:

1. That, upon the informal request of the parties, discovery in this matter shall be completed on or before January 31, 1994.

2. That the Plaintiff's Motion to Compel [Docket No. 12] is DENIED.

---

4. To use a somewhat homely analogy, if counsel were to inquire of a party, during the course of a deposition, how it was that the party knew of the location of that deposition, and if the party were to respond that his attorney provided him with that information, we would doubt that Demming would seriously argue that a waiver of an attorney-client privilege had transpired.

Indeed, a somewhat more analogous circumstance arises from the fact that, in Demming's presence, Anderson advised the Commissioners that if he counseled them while she was present, the attorney-client privilege could be lost. To avoid such a consequence, Demming was asked to, and did voluntarily, excuse herself. Notably, although Anderson's comment to the Commissioners was undoubtedly legal advice, Demming does not suggest—properly, we think—that such a comment impliedly waived HRAD's attorney-client privilege.

5. Ordinarily, an "action for unemployment benefits is not predicated on the same cause of action" as that involving the breach of an employment contract and, consequently, the issues are resolved by resort to different principles of law. See, *Knutson v. DJM Transport, Inc.*, 413 N.W.2d 598, 600 (Minn.App.1987); but cf., *Redalen v. Farm Bureau Life Insurance Co.*, 504 N.W.2d 237, 239 (Minn.App.1993). Under the facts before the Court, the letter advises between Anderson and his client did not rise to the level of the merits, legal or factual, of an action by Demming under the Minnesota Economic Security Laws. All that Anderson confirms in his letter is an understanding that, for "tactical reasons," HRAD was intending to accept a recommendation from him, and would not be contesting Demming's unemployment compensation claim.