STATE, Plaintiff-Respondent, v. SWANSON, Defendant-Appellant.

Supreme Court

*No: 77–217. Argued October 9, 1979.—*
*Decided November 6, 1979.*
(Also reported in 284 N.W.2d 655.)

For the appellant there were briefs by *W. A. Kirkpatrick* and *Hale, Skemp, Hanson, Schnurrer & Skemp,* of La Crosse, and oral argument by *William P. Skemp.*

For the respondent the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.  This is an appeal from a judgment entered on June 22, 1977, imposing a forfeiture of $100 and assessing costs and disbursements of $123.53 against defendant-appellant Harold Swanson (defendant), following a finding that the defendant who was an alderman of the city of La Crosse and chairperson of the five-member Annexation and Apportionment Committee (Committee) of the Common Council failed to give public notice of a September 23, 1976, meeting of the Committee and attended the meeting knowing that notice had not been given, in violation of secs. 19.83 and 19.84, Stats. After the complaint was filed, the defendant answered, denying the violation, and moved for summary judgment. The trial judge granted summary judgment in favor of the state, pursuant to sec. 802.08 (6). The defendant appeals.

The issues on appeal are: (1) Was the September 23, 1976, meeting of the Annexation and Apportionment Committee a "meeting" as defined by sec. 19.82 (2), Stats.? (2) In forfeiture actions brought under sec. 19.97 (1), is

the state required to prove a specific intent to violate the Open Meeting Law?

The parties have stipulated to most of the following facts: By resolution dated March 11, 1976, the Common Council of the city of La Crosse established an Annexation and Apportionment Committee. The Committee was given "the authority to deal with firms, persons and corporations relative to annexation and make recommendations and reports to the Common Council on annexation matters."

By resolution dated September 9, 1976, the Common Council authorized the Committee "to negotiate with the Town of Medary such compromise or compromises that may be deemed necessary and desirable to effect a solution to the impasse with respect to sewer service to the Town of Medary, and report back to the Common Council for its consideration."

The defendant was contacted by several residents of the town of Medary who requested that the members of the Committee meet with town of Medary residents to discuss annexation and sewer service to the town. The defendant agreed and asked the La Crosse City Clerk to notify only the members of the Committee that a conference would be held at the Fauver Hill School in the town of Medary at 7. p.m., September 23. The defendant also requested the City Clerk not to notify the news media. The City Clerk told the defendant that she would be unable to comply with his requests. The defendant then personally notified each member of the Committee but did not notify the news media or the general public and did not comply with the notice provisions of secs. 19.83 and 19.84, Stats. Thus the meeting took place without being preceded by the public notice referred to in sec. 19.84(1)(b). In response to written interrogatories, the defendant stated that he did not notify the public or the news media because the

town of Medary residents requested him to notify only Committee members and that he took no action to comply with secs. 19.83 and 19.84 because, in his words, "Such statutes [are] not applicable to this meeting." He did not seek legal advice from the City Attorney's office regarding whether notice should have been given.

On September 23 the defendant and the other four members of the Committee met with six citizens of the town of Medary, including one who was the chairperson of the town of Medary Sanitary Sewer District and who had selected the remaining five Medary residents in attendance. No officers of the town of Medary attended the meeting. The doors to the meeting were not locked, and no one was refused entry.

The participants discussed annexation, a shopping center, and water and sewer services, as well as cost information for such services. The participants also discussed a document dealing with annexation and related subjects which was distributed by the Committee. The document invited Medary residents to "form a representative group of at least five or six people to seriously negotiate with the Annexation Committee" and proposed, as "the only reasonable solution to all our problems," that the town of Medary end its incorporation attempt, allowing the city of La Crosse to annex certain property; in return, La Crosse would allow residents of certain areas in Medary to hook on to the La Crosse sewer system.

Following the meeting the Committee received a letter from those residents of the town of Medary who attended which acknowledged their lack of official standing and which was identified as "a response to the proposal made at our meeting on September 23, 1976." The letter proposed "two possibilities for fruitful negotiations" between Medary and La Crosse.

On December 9, 1976, on the complaint of a La Crosse radio station, a complaint was filed alleging that the defendant's participation in the September 23 meeting constituted violations of the Wisconsin Open Meeting Law. The defendant denied the allegation and claimed the September 23 meeting was a "conference" for information purposes and not subject to the provisions of the Open Meeting Law. The defendant moved for summary judgment. In a memorandum decision the trial court concluded that the September 23 meeting was a "meeting" as defined by sec. 19.82(2), Stats., rather than an exempt "conference." The decision contains the trial court's observation that "[o]ther than the argument that this was an informational meeting, no facts have been produced by the defendant to rebut the presumption set forth in Section 19.82(2) Wis. Stats." Therefore, the trial judge granted judgment in favor of the state, pursuant to sec. 802.08(6). Judgment was entered against the defendant imposing a forfeiture of $100 and assessing costs and disbursements of $123.53.

The defendant concedes that the Committee is a "governmental body" as that term is used in sec. 19.82, Stats.[1]

---

[1] Sec. 19.82(1) and (2), Stats., provides:

"19.82 **Definitions.** As used in this subchapter:

"(1) 'Governmental body' means a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order; a governmental or quasi-governmental corporation; or a formally constituted subunit of any of the foregoing, but excludes any such body or committee or subunit of such body which is formed for or meeting for the purpose of collective bargaining under subch. IV or V of ch. 111.

"(2) 'Meeting' means the convening of members of a governmental body for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. If one-half or more of the members of a governmental body are present the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties dele-

The defendant further concedes that he has the burden of rebutting the presumption that the September 23 meeting was for the purpose of exercising the responsibilities, authority, power, or duties delegated to or vested in the Committee because all of the Committee's members were present.

In his effort to rebut the presumption, the defendant contends the gathering was a conference convened for the purpose of exchanging information and not for the purpose of exercising the Committee's responsibilities, authorities, or duties. Though he acknowledges the Open Meeting Law has been substantially revised since this court decided *State ex rel. Lynch v. Conta,* 71 Wis.2d 662, 239 N.W.2d 313 (1976), the defendant cites the following language from that decision as support for his conclusion that the gathering was an exempt conference excused from the statutory requirement by the last line in subsection 2 of sec. 19.82, Stats. "If members of a governmental body intentionally gather to discuss business without undertaking a formal meeting, they can be described as in a conference." *Id.* at 684.

However, the defendant fails to recognize that the word "conference" is used in a different sense when employed in sec. 19.82(2), Stats. This is made clear in the passages which follow the defendant's excerpt:

"The statute does not let such possible gatherings exist as an evasion of the law. A conference may be analyzed to see if it is designed to avoid an open meeting requirement. If such intention is discerned, it may thereupon be designated a "meeting" under the statute for analysis of its exact noncompliance with open session requirements." *Id.* at 684.

"...

"The revision of our open meeting law when forfeiture was added as a sanction also included the addition of conferences "designed to evade the law." The establish-

gated to or vested in the body. The term does not include any social or chance gathering or conference which is not intended to avoid this subchapter."

ment that such occurred, for prosecution purposes, is obviously a question of fact. Circumstances themselves, however, may dictate that evasion is being designed. *If every member of a governmental body is present at a conference and any of the broad activity that composes governmental activity as defined in sec. 66.77(3), Stats., is undertaken, a question of evasion is posed; the members are exposing themselves to the jeopardy of a prosecution.* A chance gathering would not justify governmental activity being intentionally conducted, unless an emergency or other difficulties (other than that engendered by open session compliance) made such action necessary. *A planned conference of the whole offers no such exigent excuse.* Likewise, when a majority and thus a quorum gather, it is a rare occasion which can justify any action without open session compliance and therefore not be considered an evasion of the law. *Quorum gatherings should be presumed to be in violation of the law,* due to a quorum's ability to thereafter call, compose and control by vote a formal meeting of a governmental body.

"As to the March 11, 1975 gathering, petitioner and both *amici curiae* agreed that a majority, a quorum of the committee, participated in a private conference. Their purpose was to receive expert advisory opinions, which action would fall into the informal government activity described in sec. 66.77(3), Stats.

*"When the members of a governmental body gather in sufficient numbers to compose a quorum, and then intentionally expose themselves to the decision-making process on business of their parent body—by the receipt of evidence, advisory testimony, and the views of each other—an evasion of the law is evidenced."* (Emphasis added.) *Id.* at 685–86.

Three and one-half months after this court's decision in *State ex rel. Lynch v. Conta, supra,* the legislature amended the Open Meeting Law to incorporate the suggested presumption which the defendant is required to overcome.

The defendant argues that, because no official of the town of Medary was present, and because only citizens acting as individuals were in attendance, the September 23 gathering was not for the purpose of exercising the

Committee's responsibilities, authority, power, or duties, and thus was not a meeting. We do not agree. The La Crosse Common Council created and empowered the Committee to represent the interests of La Crosse in annexation matters. However, the Medary Town Board need not represent those areas of the town under consideration for annexation by La Crosse because the property owners and electors within an area of the town may determine whether annexation will occur, independent of the Town Board. The interests of the Town Board and of citizens and property owners of the area proposed to be annexed may at times be in conflict. Therefore, individual town residents and property owners may deal directly with the city. That occurred here.[2]

The defendant argues that the Committee did not have authority to bind the city in any agreement with the town residents. The statute does not require or contemplate that committees must have such authority before they are subject to the provisions of the Open Meeting Law. The ultimate question is whether the members of a governmental body have convened for the purpose of exercising the responsibilities, authority, power, or duties delegated to or vested in the body, sec. 19.82 (2), Stats., and not whether the governmental body is empowered to exercise the final powers of its parent body. In this case the Committee's actions were consistent with and in furtherance of its charge to "deal with firms, persons and corporations relative to annexation."

[2] Despite efforts to reach a negotiated solution, the city of La Crosse enacted in annexation ordinance on March 9, 1978, annexing the Dayton-Hudson site and other parcels after an annexation petition was signed by the owners of six parcels and by four electors. The ordinance's validity was upheld after a challenge by the town of Medary and its sanitary district. *See: Town of Medary v. City of La Crosse,* 88 Wis.2d 101, 277 N.W.2d 310 (Ct. App. 1979).

We conclude the facts do not support the defendant's assertion that the September 23 meeting with town of Medary residents was an exempt conference.

The defendant argues the trial court denied him a jury trial on the issue of intent when summary judgment was granted to the plaintiff. Sec. 19.96, Stats.,[3] applies to a person who "knowingly" attends a meeting held in violation of the statute. We do not interpret *State ex rel. Lynch v. Conta, supra,* as controlling on this issue of scienter for that case, an original action for declaratory judgment, was "concerned not with whether the respondents are candidates for the penalty of a 'knowing' violation, but rather merely with whether there was a violation." 71 Wis.2d at 679.

The defendant contends that he is not subject to the forfeitures imposed by sec. 19.96, Stats., because he did not know that the gathering he attended was a "meeting," and thus did not know that he violated the Open Meeting Law by attending the meeting. The relevant portion of sec. 19.96 provides: "Any member . . . who knowingly attends a meeting of such body held in violation of this subchapter . . . shall forfeit without reimbursement not less than $25 nor more than $300 for each such violation."

---

[3] Sec. 19.96, Stats., provides: "Any member of a governmental body who knowingly attends a meeting of such body held in violation of this subchapter, or who, in his or her official capacity, otherwise violates this subchapter by some act or omission shall forfeit without reimbursement not less than $25 nor more than $300 for each such violation. No member of a governmental body is liable under this subchapter on account of his or her attendance at a meeting held in violation of this subchapter if he or she makes or votes in favor of a motion to prevent the violation from occurring, or if, before the violation occurs, his or her votes on all relevant motions were inconsistent with all those circumstances which cause the violation."

"Knowingly" is not defined in the statute. In prosecutions under federal criminal statutes prohibiting knowing conduct, the federal circuit courts of appeal have approved the premise that "knowingly" is not limited to positive knowledge but includes the state of mind of one who acts "with an awareness of the high probability of the existence of the fact in question," or when one "does not possess positive knowledge only because he consciously avoided it." *United States v. Jewell*, 532 F.2d 697, 700, 702, nn. 12 & 13 (9th Cir. 1976) (in banc), *cert. denied* 426 U.S. 951 (1976). We agree and hold this definition applicable to sec. 19.96, Stats.

Applying this standard, we conclude the facts support the trial court's judgment that the defendant's attendance at the Fauver Hill School meeting constituted a violation of the Open Meeting Law. After the City Clerk refused to comply with his requests, the defendant personally notified each member of the Committee; and he attended the meeting knowing the subject of the meeting and knowing that public notice had not been given. The defendant did not seek advice from the City Attorney concerning the requirements of the Open Meeting Law, even though, as he conceded in this court during oral argument, the City Clerk had told him to consult the City Attorney on whether public notice should be given.

The statutory text is silent on whether scienter is an element of the offense when the violation of the Open Meeting Law is one other than attendance at illegally convened or conducted meetings. Although we stated in *State v. Alfonsi*, 33 Wis.2d 469, 476, 147 N.W.2d 550 (1967), that "the element of scienter is the rule rather than the exception in our criminal jurisprudence," we recognize that "[a] legislature may create a crime which

requires no specific intent." *State v. Gould*, 56 Wis.2d 808, 810, 202 N.W.2d 903 (1973). "Wisconsin has abolished all common-law crimes, and the element of intent of the statutory crimes is only necessary when specified by statute." *Flowers v. State*, 43 Wis.2d 352, 360, 168 N.W.2d 843 (1969).[4]

In *State v. Hartfiel*, 24 Wis. 60 (1869), this court affirmed the conviction of a tavern keeper for selling liquor to a minor notwithstanding that the minor was over six feet tall and had informed the tavern keeper that he was of age:

"The authorities cited are to the effect that, where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact, or state of things contemplated by the statute, will not excuse its violation.

". . . [W]e have no doubt that the legislature intended to inflict the penalty, irrespective of the knowledge or motives of the person who has violated its provisions. Indeed, if this were not so, it is plain that the statute might be violated times without number, with no possibility of convicting offenders, and so it would become a dead letter on the statute book, and the evil aimed at by the legislature remain almost wholly untouched. To guard against such results, the legislature has, in effect, provided that the saloon keeper, or other vendor of intoxicating liquors or drinks, must know the facts—must know that the person to whom he sells is a *qualified drinker*, within the meaning of the statute; and, if not, he acts at his peril in disobeying the requirements of the law." (Emphasis in original.) *Id.* at 61–62.

*See also: West Allis v. Megna*, 26 Wis.2d 545, 548–49, 133 N.W.2d 252 (1965).

---

[4] Sec. 939.23, Stats., provides rules of statutory construction to determine "[w]hen criminal intent is an element of a crime in the criminal code [Title XLV, Stats.]." The violation charged here is not part of the criminal code.

In *State v. Dried Milk Products Co-operative,* 16 Wis.2d 357, 114 N.W.2d 412 (1962), this court affirmed the imposition of a $400 fine, despite the absence of any actual knowledge of the violation on the defendant's part. The court described the purpose of such enactments as being the enforcement of a high standard of care:

"Statutes of this nature, imposing criminal penalty irrespective of any intent to violate them, have for their purpose the requirement of a degree of diligence for the protection of the public which shall render a violation thereof impossible. . . . These statutes are examples of situations where a person must at his peril see to it that the regulations are not violated by his acts or by the acts of another acting in his behalf." (Citations omitted.) *Id.* at 362–63.

In *State v. Collova,* 79 Wis.2d 473, 482, 486, 255 N.W.2d 581 (1977), the court set forth the test to be employed when "determining where the legislature intended to draw the line between offenses which do and do not require scienter":

"The inquiry, reduced to its simplest terms, may be stated to be whether the statute appears on balance to be designed to punish wrongdoers or to implement a high standard of care on the part of the public."

The analysis applied by the court in *State v. Collova, supra,* supports the conclusion that scienter is not an element of an offense when a defendant is charged with a violation of the Open Meeting Law by some act or omission other than attendance at illegally convened or conducted meetings; the purpose of the forfeiture section of the Open Meeting Law is directed more towards implementing and ensuring the public policy "that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business," sec.

19.81(1), Stats., rather than towards punishing the wrongdoer.

The defendant elected to seek summary judgment after having stipulated to the facts presented to the court. Sec. 802.08(6), Stats.,[5] clearly authorized the trial court to grant summary judgment to the plaintiff under the circumstances presented. Because we conclude the stipulated facts support the trial court's judgment that the defendant did not rebut the presumption that the meeting was subject to the provisions of the Open Meeting Law and that the defendant's claim that he did not believe the statute applied to this type of meeting is not a defense, we affirm the trial court's judgment.

*By the Court.*—Judgment affirmed.

---

[5] Sec. 802.08(6), Stats., provides: "If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor."