**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 5, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1953**

Cir. Ct. No. **2020CV1745**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN EX REL. LEANNE WIED,

PLAINTIFF-APPELLANT,

V.

SCOTT WHEELER AND JEAN LAMBERT,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

¶1 GUNDRUM, P.J. On May 12, 2020, the Board of Education for the Elmbrook School District (board) met—via Zoom due to the Covid-19

pandemic—to select a candidate to fill a vacancy on the board.[1] Leanne Wied and Mushir Hassan were two of four candidates under consideration to fill that vacancy. Hassan was ultimately selected.

¶2 Wied filed this complaint against Scott Wheeler and Jean Lambert, respectively the president and vice-president of the board, alleging they violated the Wisconsin Open Meetings Law by utilizing secret email voting for the selection process during that May 12 meeting. Wheeler and Lambert filed a motion to disqualify Wied as relator, which the circuit court granted.[2] The parties thereafter stipulated to the substitution of Neil Bubke as relator.[3] Subsequently, the court denied Bubke's motion for summary judgment, granted summary judgment to Wheeler and Lambert, and dismissed the case. Bubke asserts the court erred in disqualifying Wied as relator and in concluding Wheeler and

---

[1] The meeting was open to the public through a link on the school district website. A recording of that meeting is available at https://www.youtube.com/watch?v=xfTJQWc6XAk&t=6434s (last visited Jan. 17, 2025) and can also be reached through the school district's YouTube page. Wheeler and Lambert have not objected to Bubke's significant reference to the video in his briefing, and we may take judicial notice of public records. *See Sisson v. Hansen Storage Co.*, 2008 WI App 111, ¶11, 313 Wis. 2d 411, 756 N.W.2d 667 ("We may take judicial notice of matters of record in government files."); *Meyers v. Bayer AG*, 2007 WI 99, ¶81, 303 Wis. 2d 295, 735 N.W.2d 448 (Roggensack, J., dissenting) ("[A] court may take judicial notice of facts easily accessible and capable of immediate and accurate determination." (citing *Perkins v. State*, 61 Wis. 2d 341, 346, 212 N.W.2d 141 (1973))); *see also* WIS. STAT. § 902.01(2)(b) (2021-22) (allowing for judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The Honorable Judge Lloyd V. Carter presiding.

[3] The circuit court did not amend the caption of this case to reflect Neil Bubke as relator.

Lambert did not violate the open meetings law.  For the following reasons we agree, and we reverse.[4]

### *Background*

¶3      On May 12, 2020, the board held a meeting via Zoom to interview and consider four candidates, including Wied and Hassan, to fill a vacant seat on the board.  In his affidavit, Wheeler indicates that following the interview portion of the meeting, he "directed all [b]oard members to send an email with their preferences" to him and the executive assistant for the board providing the member's "first and second preference from the four candidates."  Wheeler assigned two points for a member's first preference and one point for a second preference.  Wheeler avers that "[i]f four or more [b]oard members selected the same person as their number one preference, it would show a majority was in favor of a particular applicant.  At that point, I would ask for a motion to conduct a vote on that individual."  The members' emails, which the district released in response to a public records request, show that members emailed their preferences within two minutes of Wheeler soliciting them, and the video recording of the meeting shows Wheeler received those emails in that same time frame.

¶4      Wheeler avers and the released email records show that no applicant was the first preference of four or more members during this first round of email

---

[4] Bubke also raises another issue—whether Wheeler and Lambert also violated the open meetings law by allowing the board to interview and consider four candidates at the May 12 meeting when the pre-meeting notice indicated "up to 3" candidates would be interviewed and considered.  Because Bubke fails to sufficiently develop an argument showing the circuit court erred as to this issue, we decline to address it.  *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶93 n.31, 282 Wis. 2d 250, 700 N.W.2d 768 ("[A] reviewing court need not address arguments insufficiently developed.").

preferences. The email preferences of the individual members and the point totals for the candidates were not announced or otherwise made known to the public or board members, other than Wheeler, during the meeting, but the names "Leanne Wied" and "Mushir Hassan" were displayed on the screen, indicating they were the top two preferences the board would continue to consider for the appointment.. Emails show that during this first round of email preferences, Wheeler and Lambert both chose Hassan as their first preference and Wied as their second.

¶5    According to the recording of the meeting, after the board finished further discussion regarding the remaining two candidates—Hassan and Wied—Wheeler stated, "Any other conversation before we take a vote? And again this vote is part of our conversation; this is not a motion at this point. It's just to see where we are at in terms of consensus." Wheeler prompted members, "If you had to select one now, who would that one be," and members began emailing Wheeler and the executive assistant their preference as between Wied and Hassan. After approximately two minutes, Wheeler stated, "All the votes aren't in yet," and then, "Waiting for two more." Seconds later, Wheeler stated, "Waiting for one," and approximately forty seconds after that, "Jian Sun we're waiting for you." About thirty seconds later, approximately three-and-one-half minutes after Wheeler invited members to begin emailing him their preferences, Wheeler announced that the preferences were "tied, 3-3." The preferences of the individual board members were not announced or otherwise made known to the public or other board members at this or any other time during the meeting, but the released email records show that for this second round of email preferences, board members Glen Allgaier, Jian Guo Sun and Linda Boucher emailed their preferences for Wied, and members Wheeler, Lambert and Jen Roskopf emailed their preferences for Hassan.

¶6 Following the tie, more discussion took place, followed by a third round of email preferences, with the choice again being only between Wied and Hassan. Wheeler instructed members, "You're voting for one candidate after thinking, considering." Over the next few minutes, members again emailed their preferences to Wheeler and the executive assistant. Wheeler and Lambert again emailed their preferences for Hassan, and Boucher and Sun again emailed their preferences for Wied. Then, Allgaier emailed his preference, switching from Wied in the second round to Hassan in the third. With that email, Wheeler and the executive assistant had received three email preferences for Hassan and two for Wied. According to time stamps on the emails, Roskopf emailed Wheeler and the executive assistant her preference thirty-one seconds later, switching from Hassan in the second round to Wied in the third. With that email, three members had sent emails indicating their preferences for Hassan and three had sent emails indicating their preferences for Wied, with both Allgaier and Roskopf having switched their preferences from the second round.

¶7 Though only three members—Wheeler, Lambert and Allgaier—had emailed a preference for Hassan, Wheeler announced, "We've got four votes for Mushir [Hassan] and two votes for Leanne [Wied]. That's enough for a motion. That's a consensus." Moments later, Wheeler stated, "If we don't make a motion, then I would suggest we adjourn. But, again, we do have four. So, is there somebody that would like to make a motion?" Approximately forty-seven seconds after Wheeler began announcing "four votes for Mushir," Lambert made a motion to appoint Hassan to fill the vacant seat on the board, and Allgaier seconded the motion. A roll call vote resulted in five members voting to appoint Hassan, with one member abstaining. The meeting concluded approximately three and one-half minutes after Wheeler had begun announcing, "We've got four votes

for Mushir [Hassan]." During that time, Wheeler never announced that Hassan had received only three preferences, and there was no disclosure to the public or other board members during the meeting as to which individual board members had indicated a preference for Hassan and which had indicated a preference for Wied. At no time during the remainder of the meeting did Wheeler prompt Roskopf to send in her email preference, as he had prompted Sun in round two, or indicate he had not received Roskopf's email preference.

¶8    Wheeler avers that "[i]n preference round three, as the email preferences came in, I could see one [b]oard member who had preferred Leanne Wied changed the preference to Mushir Hassan. At that point, I believed there were 4 preferences for Mushir Hassan and 2 preferences for Leanne Wied. I announced that result." He further avers that he "later learned that, during round three, a [b]oard member who initially preferred Mushir Hassan had changed to Leanne Wied. This would have, again, resulted in a 3-3 tie. That email was delayed, which is why I did not see it during the meeting." No evidence in the record indicates that following the conclusion of the meeting, Wheeler took any steps to inform the public or board members that he had only received three, not four, email preferences for Hassan and that he had received three email preferences for Wied.

¶9    Wied filed this action alleging Wheeler and Lambert violated Wisconsin's Open Meetings Law during the May 12, 2020 meeting. She sought

the imposition of civil forfeitures against Wheeler and Lambert and attorney fees and costs incurred in prosecuting this action.[5]

¶10 Wheeler and Lambert filed a motion to remove Wied as relator, which the circuit court granted on the apparent basis that Wied had a "personal interest" in this matter in part because she had filed a notice of claim against the Elmbrook School District (district) seeking compensation for the salary she would have received if she, instead of Hassan, had been appointed to fill the school board vacancy.[6] Bubke was substituted as relator. The court subsequently granted Wheeler and Lambert summary judgment based on its belief that "there needs to be some demonstration that there was some intent to hide something" and its determination that it could not conclude there was such intent because the records of the May 12 email preferences were eventually released in response to a public records request.

¶11 Bubke appeals, challenging the circuit court's order removing Wied as relator as well as its order granting summary judgment to Wheeler and Lambert.[7]

---

[5] Wied is not asking that Hassan's one-year appointment to the board, which began in May 2020, be declared null and void.

[6] The record does not contain a transcript of the August 23, 2021 hearing at which the circuit court disqualified Wied as relator. The briefing by both parties before the circuit court and on appeal, however, indicates the court removed her as relator because she had a personal interest in the matter as evidenced by her notice of claim.

[7] The notice of appeal filed by Bubke refers only to the order granting summary judgment. However, the parties also briefed the issue of whether the circuit court erred with its order removing Wied as relator. We will consider both issues. *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon.").

*Discussion*

¶12    We review de novo the circuit court's grant of summary judgment. ***Paskiewicz v. American Fam. Mut. Ins. Co.***, 2013 WI App 92, ¶4, 349 Wis. 2d 515, 834 N.W.2d 866. "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65. Whether, in granting summary judgment to Wheeler and Lambert, the circuit court "properly interpreted and applied the open meetings law" are questions of law we review de novo. *See* ***State ex rel. Krueger v. Appleton Area Sch. Dist. Bd. of Educ.***, 2017 WI 70, ¶20, 376 Wis. 2d 239, 898 N.W.2d 35.

Removal of Wied as relator

¶13    We first consider whether the circuit court erred in removing Wied as relator. This question requires us to apply the open meetings law to the undisputed facts, which is a matter of law we review independently. *See* ***State ex rel. Badke v. Village Bd. of Greendale***, 173 Wis. 2d 553, 569, 494 N.W.2d 408 (1993).

¶14    WISCONSIN STAT. § 19.97 "Enforcement," provides:

> **(1)** This ["Open Meetings of Governmental Bodies"] subchapter shall be enforced in the name and on behalf of the state by the attorney general or, upon the verified complaint of *any person*, by the district attorney of any county wherein a violation may occur….
>
> ….
>
> **(4)** If the district attorney refuses or otherwise fails to commence an action to enforce this subchapter within 20 days after receiving a verified complaint, *the person making such complaint* may bring an action under subs. (1)

> to (3) *on* his or *her relation* in the name, and on behalf of, of the state.

(Emphases added.)  Pursuant to this statute, "any person" who makes a verified complaint may bring an open meetings law action if the district attorney fails to act.[8]  The statute does not limit "any person"; it does not state that only certain persons may bring an action.  Wheeler and Lambert direct us to no law indicating a relator does not qualify as "any person" simply because he or she may have some personal interest related to a matter that was under consideration at the challenged meeting.

¶15    Indeed, it is often the homeowner, business owner, or other person directly aggrieved by a government entity's conduct that has enough interest and motivation to pursue an open meetings law action, because he or she is disturbed by either the process related to or the outcome of a meeting, or both, and often in an attempt to undo some official action taken at the meeting.  The legislature appears to have understood that persons with a personal interest would utilize this statute, as WIS. STAT. § 19.97(3) makes voidable "[a]ny action taken at a meeting of a governmental body held in violation of this subchapter."  It would be a unique case indeed in which a person with no interest in the outcome of a government action brought an open meetings law challenge in an attempt to void the action.  Furthermore, were open meetings law challenges restricted to only disinterested persons, there would likely be little citizen enforcement of the statute, to the detriment of the public.  In short, we see no reason to believe the legislature intended to restrict relators to only persons who do not have a personal interest

---

[8] When interpreting the text of a statute, we follow the framework set forth in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶44-52, 271 Wis. 2d 633, 681 N.W.2d 110.

related to a meeting. Wheeler and Lambert's assertion that Wied cannot serve as relator because she has a personal interest in the case and served a related notice of claim on the district fails.

¶16    Our supreme court's decision in *State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 508 N.W.2d 603 (1993), supports this conclusion. In that case, Hodge applied to the town for a permit to store junked automobiles on his property. *Id.* at 67. Believing the law allowed for it, the board conducted deliberations regarding the permit in closed session and then returned to open session and unanimously voted to deny Hodge the permit. *Id.* at 68. Hodge submitted a verified complaint to the district attorney asserting that the closed deliberations violated the open meetings law. *Id.* at 69. When the district attorney refused to prosecute, Hodge filed suit. *Id.* Ultimately, our supreme court determined the board had violated the open meetings law, and it granted Hodge relief, including voiding the board's action denying him the permit and remanding for the board to reconsider the permit application "in a manner consistent with the [o]pen [m]eetings [l]aw." *Id.* at 76. Despite Hodge's direct personal interest in the outcome of the board's action—to be permitted to store junked vehicles on his property—and the suit challenging it, he was in no way precluded from maintaining the suit under the open meetings law.

¶17    Discussing *Hodge*, Wheeler and Lambert write that pursuant to it "relators under the [o]pen [m]eetings [l]aw serve as private attorneys general by vindicating *the rights of the public to open government*." (Emphasis added.) Wheeler and Lambert omit key language, as *Hodge* actually states: "[T]he prevailing relator under the [o]pen [m]eetings [l]aw serves as a private attorney general by vindicating *his or her own rights* and the rights of the public to open government." *Id.* at 78 (emphasis added). This key, emphasized language, along

with the plain "any person" language of WIS. STAT. § 19.97, ends discussion as to Wheeler and Lambert's contention that Wied could not serve as relator because she, like Hodge, may have a personal interest in challenging the process that led to Hassan's appointment during the May 12 meeting. A relator need not be disinterested in order to pursue an open meetings law challenge.

¶18 In a grasping-at-straws effort, Wheeler and Lambert direct us to WIS. STAT. § 978.045(1r)(bm)8. in support of their position that the circuit court properly removed Wied as relator. This provision, they assert, "provides courts discretion to preserve the independence of a prosecution in the face of a conflict of interest" and "enables the court to install an independent, impartial, and personally disinterested prosecutor." This statutory provision provides Wheeler and Lambert no assistance. It states in relevant part:

> (bm) The judge may appoint an attorney as a special prosecutor at the request of the district attorney to assist the district attorney in the prosecution of persons charged with a crime, in grand jury proceedings, in proceedings under [WIS. STAT.] ch. 980, or in investigations…. [T]he judge may appoint an attorney as a special prosecutor only if the judge or the requesting district attorney submits an affidavit to the department of administration [DOA] attesting that any of the following conditions exist:
>
> ….
>
> 8. The district attorney determines that a conflict of interest exists regarding the district attorney or the district attorney staff.

In numerous ways—not the least of which are the facts that we see no indication Bubke is an attorney or that the district attorney requested an appointment of someone to serve as relator in place of Wied, that an affidavit was ever submitted to the DOA by the court or district attorney, or that the court appointed Bubke due to a conflict of interest "regarding the district attorney or the district attorney

11

staff," which is not remotely at issue in this case—this statutory provision is clearly not supportive of Wied's removal as relator.[9]

¶19 Wied is the "any person" who filed the verified complaint with the district attorney and after twenty days of inaction, brought this open meetings action. Wied was the one authorized by statute to pursue this matter "in the name, and on behalf, of the state," *see* WIS. STAT. § 19.97(1), and the circuit court erred in removing her as relator.

Open meetings law violation

¶20 The circuit court determined that in order to violate the open meetings law, Wheeler and Lambert had to "inten[d] to hide something" and that it could not conclude they had such intent because the records of the May 12 email preferences were eventually released in response to a public records request. Thus, the court determined Wheeler and Lambert did not violate the open meetings law. We conclude wrongful intent is not necessary and Wheeler and Lambert violated the law.

¶21 The circuit court focused on WIS. STAT. § 19.88, "Ballots, votes and records," which provides:

---

[9] Wheeler and Lambert also seek support from American Bar Association Criminal Justice Standard 3-1.7(f): "The prosecutor should not permit the prosecutor's professional judgment or obligations to be affected by the prosecutor's personal, political, financial, professional, business, property, or other interests or relationships." ABA *Criminal* Justice Standards for the Prosecution Function, Standard 3-1.7 Conflicts of Interest (4th ed. 2017) (emphasis added). Because Wheeler and Lambert provide no legal support for their position that this rule, which relates to *attorneys*, has any legal impact upon nonattorney Wied bringing this noncriminal case, we do not address it. *See Borsellino v. DNR*, 2000 WI App 27, ¶11, 232 Wis. 2d 430, 606 N.W.2d 255 ("We will not consider arguments unsupported by reference to legal authority."); *ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments).

**(1)** Unless otherwise specifically provided by statute, no secret ballot may be utilized to determine any election or other decision of a governmental body except the election of the officers of such body in any meeting.[10]

**(2)** Except as provided in sub. (1) in the case of officers, any member of a governmental body may require that a vote be taken at any meeting in such manner that the vote of each member is ascertained and recorded.

**(3)** The motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection to the extent prescribed in subch. II of [WIS. STAT.] ch. 19.

Because the individual board members' email preferences were eventually released, the court concluded § 19.88(3) had been satisfied. But while compliance with § 19.88(3) is necessary to avoid running afoul of that particular statutory provision, such compliance does not immunize officials' conduct in violation of WIS. STAT. § 19.83(1).

¶22     WISCONSIN STAT. § 19.83(1) provides that "[a]t any meeting of a governmental body, all discussion shall be held … only in open session …." Even if the email preferences did not violate WIS. STAT. § 19.88(3), they violated § 19.83(1).

¶23     While Wheeler himself repeatedly referenced the email preferences sent to him by board members during the meeting as "votes," he also referred to the emails as "part of our conversation … to see where we are at in terms of consensus." And, indeed they were part of the conversation, as they were the

---

[10] This exception is inapplicable here, as the board members voted to fill a vacancy on the board, not to elect officers.

culmination—and the most crucial part—of the discussion. Had Wheeler asked members to state their preferences verbally, the conversation/discussion would have simply continued with members verbalizing their preferred candidate for all to hear. The email communications that kept the public in the dark as to each board member's preference amounted to "discussion" that was not "held … *in* open session." *See* WIS. STAT. § 19.83(1) (emphasis added).

¶24 Board members sharing their preferences with Wheeler in a manner that hid the same from the public and other board members was concealment that was initiated and invited by board president Wheeler. Wheeler instead could have read aloud each member's emails, invited board members to voice their preferences verbally for all to hear, or employed a simple gameshow technique of having members write their preferences on a sheet of paper and simultaneously hold them up for all to see. What the open meetings law does not allow for, however, is discussion communicated secretly so that members of the public are kept in the dark as to what the elected school board members said. Here, these emails were not communicating the individual board member's favorite meatloaf recipe, they were determining which single candidate would be put before the board for the ultimate vote to fill the vacant seat, thereby affecting who would be in a position of power to significantly impact district policy and finances.

¶25 Citing WIS. STAT. § 19.96, Wheeler and Lambert assert they "are only personally accountable for a violation of the [o]pen [m]eetings [l]aw if they *knowingly* attended a meeting held in violation of such law or otherwise *knowingly* committed a violation by any other act or omission." Wheeler and Lambert add language to § 19.96 that the legislature did not choose to add. That statute provides in relevant part:

> Any member of a governmental body <u>who</u> *knowingly* <u>attends</u> a meeting of such body held in violation of this subchapter, or <u>who</u>, in his or her official capacity, <u>otherwise violates</u> this subchapter by some act or omission shall forfeit without reimbursement not less than $25 nor more than $300 for each such violation.

Sec. § 19.96 (emphasis added). Because the legislature only included the word "knowingly" before "attends" and did not also include it before "violates," "knowingly" only applies with regard to a member of a governmental body who "attends a meeting of such body held in violation of this subchapter." *See id.* "[K]nowingly" does not also apply with regard to a member who "otherwise violates this subchapter by some act or omission." *See id.*; *see generally* **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.**, 2004 WI 58, ¶¶44-52, 271 Wis. 2d 633, 681 N.W.2d 110.

¶26 Our supreme court considered this very WIS. STAT. § 19.96 language in the open meetings law case of **State v. Swanson**, 92 Wis. 2d 310, 284 N.W.2d 655 (1979). After discussing how "knowingly" applied with regard to an alderman's "attend[ance]" at a meeting that had not been properly noticed, the **Swanson** court noted that the "text [of § 19.96] is silent on whether scienter is an element of the offense when the violation of the [o]pen [m]eeting[s] [l]aw is one other than attendance at illegally convened or conducted meetings." **Swanson**, 92 Wis. 2d at 319. The court concluded that "scienter is *not* an element of an offense when a defendant is charged with a violation of the [o]pen [m]eeting[s] [l]aw by some act or omission other than attendance at illegally convened or conducted meetings." **Id.** at 321 (emphasis added). The court further expressed that

> the purpose of the forfeiture section of the [o]pen [m]eeting[s] [l]aw is directed more towards implementing and ensuring the public policy "that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of

> governmental business," [WIS. STAT. §] 19.81(1), rather than towards punishing the wrongdoer.

*Swanson*, 92 Wis. 2d at 321-22.

¶27     Scienter is not an element of the particular violation at issue in this case; Wheeler and Lambert did not need to knowingly violate WIS. STAT. § 19.83(1) through their May 12 conduct to be held liable. Their violation of the open meetings law is not for *knowingly* "attending" a meeting in violation of the law but for "otherwise violat[ing]" it. *See* WIS. STAT. § 19.96; *Swanson*, 92 Wis. 2d at 321-22. For Lambert, that was by her act of sending emails to Wheeler communicating her preferences in a manner that kept that important "part of [the] conversation" hidden from the public during the meeting, i.e., discussion through her emails that was done outside of "open session." For Wheeler, that was by his repeated acts, as the school board president running the meeting, of initiating and inviting the board members to communicate their candidate preferences to him in a manner that kept the public and other board members in the dark during the meeting as to how individual members were influencing the selection process on a matter of significant public concern.

¶28     Because of their violations, Wheeler and Lambert "shall forfeit without reimbursement not less than $25 nor more than $300."[11]  *See* WIS. STAT.

---

[11] We observe that $25 and $300 are respectively the same minimum and maximum penalties that were in effect when this law was enacted in 1976. 1975 Wis. Laws, ch. 426, § 1.  In today's dollars, that minimum and maximum would be just under $140 and just over $1,650.  *See, e.g.*, *Inflation Calculator*, AMORTIZATION.ORG, https://www.amortization.org/inflation/ (last visited Jan. 24, 2025). Conversely, a $25 penalty today would be the equivalent of less than $5 in 1976, and a $300 penalty today would be around $54 in 1976.  *See Id.*; *see also Inflation Calculator*, FED. RES. BANK OF MINNEAPOLIS, https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator (last visited Jan. 24, 2025).

§ 19.96. The amount each should forfeit within this range is for the circuit court to determine in its discretion upon remand. We emphasize that the forfeiture imposed upon Wheeler and Lambert need not be identical. The record indicates significantly less culpability on the part of Lambert.

¶29     This case provides an excellent example of the real-world impact of failing to adhere to open meetings law requirements. Had Wheeler employed any of the above-suggested discussion methods, *see supra* ¶24, or a similar alternative, so that the public and other board members would have been aware of each member's candidate preferences contemporaneously with those preferences being communicated to Wheeler during the meeting, the board would not have moved Hassan forward as the sole candidate for the board's up-or-down vote after the third round of preference emails, if it would have at all. This is so because all would have been aware Hassan in fact had not received the four email preferences required to advance him for the up-or-down vote to fill the vacancy. But, the secrecy of Wheeler's process allowed him to erroneously announce his own preferred candidate, Hassan, as having received four email preferences to advance for the subsequent up-or-down vote, and no one was in a position—at the time when it mattered, as opposed to after Hassan had already been selected, voted on, and seated as a new board member—to monitor the process.

¶30     The use of Wheeler's clandestine email process for communicating board members' preferences appears to us little different than if the members had passed secret notes to Wheeler during an in-person meeting to indicate their preferences—the very process Wheeler avers the board would have used if the meeting had been in person. In their briefing, Wheeler and Lambert attempt to use the secret-note method for in-person meetings to justify the secret email method

used on May 12, but one manner of violating the open meetings law does not justify another manner of violating it.

¶31 It is the very cloak of secrecy that the open meetings law is designed to prevent that allowed Wheeler to affirmatively misrepresent to the public and other board members, "We've got four votes for Mushir [Hassan]" and moments later, "again, we do have four," which misrepresentation resulted in the appointment of a particular candidate—Wheeler's preferred candidate—to fill one of the seven seats on the board, again, to make all manner of policy and budgetary decisions for the district.

¶32 Ultimately, the board members used their elected government positions and authority to determine who would be appointed to fill the board vacancy. Whether the email preferences are called "votes" or something else matters little. As Wheeler avers, "[t]he purpose and intent [was] to narrow the field to one or two candidates for consideration and formal vote." Two of the four applicants for the position were completely eliminated from consideration based upon these email preferences, yet no one attending/watching the meeting knew how any particular member used his or her elected government position and authority to affect that outcome or even knew if it was true that Hassan and Wied received the two highest scores to advance to the second round. The same certainly holds for the preferences/"votes" as between Wied and Hassan. Again, the determinative nature of these secret email preferences is unmistakable as Hassan was put forward as the only choice for the board to officially vote on because Wheeler wrongly announced that Hassan had "four votes." Once Wheeler made that announcement, the appointment of Hassan to fill the vacancy was essentially a done deal.

18

¶33 Stunningly, Wheeler and Lambert claim the process to ultimately select their personally preferred choice of Hassan was "entirely transparent." Had the process truly been so, it would have been readily apparent to all members of the board and the public in real time that Hassan never received the four votes necessary to have his name put forth for the up-or-down vote to fill the vacancy.

Remedies

¶34 WISCONSIN STAT. § 19.97(4) provides that because the relator in this case "prevails," "the court may award actual and necessary costs of prosecution, including reasonable attorney fees." While the statute says the circuit court "may" award such "costs of prosecution," our supreme court has put a heavy thumb on the scale of granting such awards.

¶35 After determining that the closed deliberations in *Hodge* had violated the open meetings law and warranted voiding the challenged board action denying the permit application to store junked automobiles, our supreme court remanded the matter to the circuit court to determine whether costs and reasonable attorney fees should be awarded under WIS. STAT. § 19.97(4). *Hodge*, 180 Wis. 2d at 76, 79. The court stated that

> a prevailing relator under the [o]pen [m]eetings [l]aw *should be awarded* attorney's fees *if* an award would advance the purpose of the [o]pen [m]eetings law: to ensure that the public has the fullest and most complete information possible regarding the affairs of government.... *If* this condition is met, fees *are awarded* <u>unless</u> there is a showing of special circumstances which would render an award unjust.

*Id.* at 78-79 (emphases added). The *Hodge* court directed the circuit court to

> consider such things as whether an award of fees to [the relator] would make him "whole", thus providing him and others in similar positions with economic incentive to

19

> privately enforce the Act…. Additionally, the court should determine whether an award would deter future [o]pen [m]eetings [l]aw violations and encourage governmental bodies to provide more openness in government.

*Id.* at 79. The court did not address whether "special circumstances existed which might render an award unjust," but it went out of its way to "caution … that the mere presence of good faith on the part of the [b]oard cannot alone be such a circumstance." *Id.* at 79.

¶36 In *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, 301 Wis. 2d 178, 732 N.W.2d 804, the supreme court pressed its thumb down further on the scale of awarding "costs of prosecution, including reasonable attorney fees" under WIS. STAT. § 19.97(4). The court determined that the school district in that case had provided insufficient notice as to the matters it would be addressing at a meeting. *Buswell*, 301 Wis. 2d 178, ¶36. In considering the issue of attorney fees for the prevailing relator, the court emphasized that the public policy declared by the legislature in WIS. STAT. § 19.81(4) "requires that the provisions of the open meetings law be liberally construed to advance the law's purposes." *Buswell*, 301 Wis. 2d 178, ¶54. The court stated that in *Hodge* it had "interpreted that requirement to merit awarding attorney fees to the prevailing relator where doing so advances the purposes of the open meetings law." *Buswell*, 301 Wis. 2d 178, ¶54. The *Buswell* court determined, as a matter of law, that awarding attorney fees in the case before it would "advance[] the purposes" of the law, as it would "provide an incentive to others to protect the public's right to open meetings and to deter governmental bodies from skirting the open meetings law." *Id.* The court did not remand for the circuit court to determine *whether* fees were appropriate but instead "to determine the appropriate award" under "the 'lodestar' methodology." *Id.*, ¶54 & n.13.

¶37    Harmonizing WIS. STAT. § 19.97(4), **Hodge** and **Buswell**, we conclude that awarding attorney fees in this case would "advance[] the purposes" of the open meetings law, as it would "provide an incentive to others to protect the public's right to open meetings and to deter governmental bodies from skirting the open meetings law." *See Buswell*, 301 Wis. 2d 178, ¶54.  On remand, the circuit court shall "award actual and necessary costs of prosecution, including reasonable attorney fees," *see* § 19.97(4), unless, in its discretion, it determines that special circumstances would make an award unjust. *See Hodge*, 180 Wis. 2d at 79.  If the court fails to make such a determination, it shall decide the appropriate award, utilizing the lodestar methodology to determine attorney fees. *See Buswell*, 301 Wis. 2d 178, ¶54 & n.13.

¶38    We remand for the circuit court to determine the appropriate amount of forfeiture to be paid by Wheeler and Lambert, *see supra* ¶28, and to award "actual and necessary costs of prosecution, including reasonable attorney fees," *see* WIS. STAT. § 19.97(4), unless Wheeler and Lambert can "show[] … special circumstances which would render an award unjust." *See Hodge*, 180 Wis. 2d at 79.

> *By the Court.*—Order reversed and cause remanded with directions.

> Recommended for publication in the official reports.